**Yolanda SALDIVAR, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–96–00010–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 1, 1998.

Rehearing Overruled Dec. 10, 1998.

Patrick J. McGuire, Corpus Christi, for appellant.

Adolfo Aguilo, Corpus Christi, for appellee.

Before MURPHY, C.J., and HUDSON and SEARS, JJ.*

## OPINION

MURPHY, Chief Justice.

Appellant entered a plea of not guilty to the offense of murder. *See* TEX. PENAL CODE ANN. § 19.02 (Vernon 1994). A jury found her guilty and assessed punishment at confinement for life in the Institutional Division of the Texas Department of Criminal Justice. In seventeen points of error, appellant contends the trial court erred in: (1) permitting the prosecutor to exclude venire persons solely on account of their race; (2) sustaining the State's challenge of a venire person; (3) denying certain constitutional protections because the State did not disclose impeachment evidence; (4) admitting her written statement; (5) admitting evidence of extraneous misconduct; (6) denying a requested jury instruction and a special issue; (7) admitting irrelevant and prejudicial opinion evidence at the punishment phase of trial; (8) denying her motion for mistrial because of prosecutorial misconduct; and (9) denying her motion for new trial because exhibits have been lost or destroyed. We affirm.

Appellant shot complainant, Selena Quintanilla Perez, in the back as complainant walked toward the door of appellant's room at the Corpus Christi Days Inn. Complainant ran from the room toward the lobby of the motel, screaming. Appellant followed her in armed pursuit. Upon entering the lobby, complainant collapsed. Before passing out, complainant told motel employees that appellant shot her.

In the meantime, appellant returned to her room. Shortly, thereafter, she went to her truck in the motel parking lot, where she was confronted by police officers. For more than nine hours, appellant sat in the truck and threatened to commit suicide. She eventually surrendered to police after conversing for several hours with members of a special hostage negotiation team.

* Senior Justice Ross A. Sears, sitting by assign-

## I. Discriminatory Exercise of Peremptory Strike

■ In her first point of error, appellant contends the trial court erred in permitting the State to exercise its peremptory challenges to exclude venire members solely on account of their race. The Fourteenth Amendment to the United States Constitution prohibits the State from using its peremptory strikes in a racially discriminatory manner. *See Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). To codify and implement this prohibition in Texas, the Legislature enacted article 35.261 of the Texas Code of Criminal Procedure. *See Hill v. State,* 827 S.W.2d 860, 863 (Tex.Crim.App.1992). Article 35.261 provides in pertinent part:

> After the parties have delivered their lists [of peremptory challenges] to the clerk ... and before the court has impaneled the jury, the defendant may request the court to dismiss the array and call a new array in the case. The court shall grant the motion of a defendant for dismissal of the array if the court determines that the defendant is a member of an identifiable racial group, that the attorney representing the state exercised peremptory challenges for the purpose of excluding persons from the jury on the basis of their race, and that the defendant has offered evidence of relevant facts that tend to show that challenges made by the attorney representing the state were made for reasons based on race. If the defendant establishes a prima facie case, the burden then shifts to the attorney representing the state to give a racially neutral explanation for the challenges. The burden of persuasion remains with the defendant to establish purposeful discrimination.

> (b) If the court determines that the attorney representing the state challenged prospective jurors on the basis of race, the court shall call a new array in the case.

TEX.CODE CRIM. PROC. ANN. art. 35.261 (Vernon 1989).

ment.

The record reflects that appellant's trial counsel did not raise the *Batson* challenge until after the jury was seated and sworn. After both parties exercised their peremptory challenges but prior to seating the jury, appellant's trial counsel requested an opportunity to make a record regarding the trial court's denial of his request for additional peremptory challenges. Appellant's trial counsel said, "I need to make a record with regard to that before they are seated with regard to the challenges that you denied me. We had to settle on this jury. I can make that record after you seat them as though I made it now?" The trial judge responded, "That's correct." The trial judge asked if everyone had inspected the jury list. Both parties responded that they would like to inspect it. The jury was then sworn and seated. After the trial court released the jury, appellant's trial counsel objected to the State's use of its peremptory challenges as follows:

> Secondly, Your Honor, with regard to the jury selection, I just want to make a note that the juror—the prosecution has struck all but one of the African–Americans that were on the panel. There's only one African–American there. They have struck eight African–Americans from the panel. They struck 13, 21, 26, 34, 38, 39, 48, and 49. We demand that the panel be quashed because of the way they did their striking, and they did it in a prejudicial way by striking racially.

The prosecutor objected that the motion was untimely. The trial judge, however, questioned whether the prosecutor was present when appellant's trial attorney made the objection. After a brief discussion as to whether the objection was preserved, the trial court postponed argument on the motion until the next morning.

The following day, appellant's trial counsel reminded the trial court that he asked to make objections to the impaneling of the jury

and that the court permitted him to do so after the jury was seated. Once again, a discussion ensued regarding when appellant's trial counsel made the *Batson* challenge and whether the trial court permitted him to make objections to the impaneling of the jury after the jury was seated. Appellant's trial counsel finally admitted, "Your Honor, let me say this: I had no inclination as to pass the challenge because I hadn't seen the color of the faces; and then, as they were seated, at the time that they did, I knew that I should do that, and I made it." Without deciding whether the objection was preserved, the trial judge allowed appellant's trial counsel to renew his *Batson* challenge. The prosecutor once again objected, stating the challenge was untimely. When asked, the prosecutor declined the opportunity to state the reasons for striking the African–American venire members and objected that appellant had not met her burden to establish a prima facie case. After hearing argument, the trial court denied appellant's motion to quash the panel.

The record shows that appellant's trial attorney did not make a *Batson* challenge until after the jury was seated and sworn. Still, appellant contends the challenge was timely. She implies the parties discussed the *Batson* challenge during an unrecorded bench conference, thus explaining the trial court's response that the prosecutor who objected to the challenge was not present when the objection was made.[1] "Such supposition on the part of this Court, however, cannot substitute for what has actually found its way into the appellate record." *Cockrum v. State*, 758 S.W.2d 577, 585 n. 7 (Tex.Crim.App.1988). Because the record reflects that appellant's trial attorney did not timely object, appellant's *Batson* challenge was not preserved for appellate review.

Even if the *Batson* challenge was untimely, appellant contends her request to strike the panel based on a *Batson* violation was timely

---

1. Appellant did not object at trial to the court reporter's failure to record the bench conference and did not raise this omission in an objection to the record. Moreover, appellant makes no objection on appeal to the unrecorded conference. Therefore, we assume appellant made all pertinent objections in open court or in a hearing.

*See Jones v. State*, 944 S.W.2d 642, 655 (Tex. Crim.App.1996) (stating appellant's burden to object if bench conferences are not held within hearing of court reporter or not recorded), *cert. denied*, —— U.S. ——, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997).

and preserved for review in light of *Moss v. State*, 877 S.W.2d 895 (Tex.App.—Waco, 1994, no pet.) (opinion on reh'g). *Moss* is distinguishable from the facts of this case. The defendant in *Moss* filed a written *Batson* objection before the trial court called the jurors' names, but failed to obtain a ruling before the jury was seated and sworn. *Id.* at 897. "Thus, the *objection* was timely under article 35.261." *Id.* (emphasis in original). The question before the Waco Court of Appeals was whether the objection was preserved for appellate review. *See id.* That appellate court noted the purpose of requiring a timely specific objection under former rule 52(a) of the Texas Rules of Appellate Procedure is to allow the trial court the opportunity to rule on the complaint and then to proceed with trial in a proper procedural and substantive manner. *Id.* Consequently, the Waco Court of Appeals found the defendant obtained a timely ruling because the trial court could have granted a mistrial after empaneling the jury if it had found a *Batson* violation. *Id.* at 898.

Here, appellant did not make a timely *Batson* objection. Therefore, she did not preserve error for appellate review. We overrule appellant's first point of error.

## II. Dismissal of Venire Person on State's Challenge for Cause

■ In her second point of error, appellant contends the trial court abused its discretion in sustaining the State's challenge for cause levied against prospective juror Gwendolyn J. Harris and in denying appellant's requests for additional peremptory challenges. Appellant contends Harris was a qualified venire person; thus, the trial court had no discretion to excuse her under article 35.16 of the code of criminal procedure. Article 35.16 "provides a framework under which *unqualified* potential jurors may be discovered by the parties and excised from the panel without a need to resort to the exercise of a peremptory strike." *Butler v. State*, 830 S.W.2d 125, 130 (Tex.Crim.App. 1992) (emphasis in original).

Harris indicated on a juror questionnaire that she had been a witness in a criminal case involving her girlfriend's son. While offering her girlfriend support in dealing with the boy, Harris observed police officers make promises to the boy, which were later broken. She also indicated that her sister-in-law had been killed in a drug house several years ago. When asked if she would have a problem with officers testifying in court that would affect her rendering a verdict or interfere with her deliberations in this case, she said she had a problem with officers, but it would not affect her service as a juror in this case. Harris also expressed concern about her children and financial problems that would prevent her from concentrating during trial. Nevertheless, the trial court asked her to return for additional questioning the following day.

Later, Harris expressed concern that her son needed her assistance because he had been suspended from school and she had to take him to see a psychiatrist the next day. She said, "I know I couldn't honestly sit up here and be a juror when I know I have a 14–year–old child that's having problems and I'm the only one that can help them." After the trial judge questioned her about the appointment, Harris asked, "So do I come back tomorrow?" As the trial judge considered whether to excuse Harris, the prosecutor challenged her for cause on the ground that she previously indicated she would have a problem with police officer testimony. The trial judge corrected the prosecutor stating that her problem wasn't with testimony, to which the prosecutor replied, "It was officers themselves, she said. I asked her if it would effect [sic] her as a juror, and she said it would." Appellant's trial attorney asked the court to note his exception and requested additional challenges. The trial judge replied, "Sure, I'll carry that." The trial court then excused Harris.

When conducting voir dire, the trial judge has the discretion to excuse a venire person under articles 35.03, 35.16, and 35.19 of the code of criminal procedure. *See Butler*, 830 S.W.2d at 130. Under article 35.03, the trial judge, upon a reason sufficient to satisfy the court, may excuse *an otherwise qualified* venire person from jury service. *See id.* (emphasis in original). Under 35.19, a judge *must* excuse a venire person who suffers a

disability sufficient to absolutely disqualify. *See id.* (emphasis in original). Under 35.16, a judge must excuse a potential juror proven to be unqualified by either of the parties upon a challenge for cause for one of many reasons enumerated in article 35.16. *See id.*

■ Excusing an *unqualified* venire person under article 35.16, however, is qualitatively different from excusing a *qualified* venire person for personal reasons under article 35.03. *Id.* (emphasis in original). The reasons for challenges for causes enumerated in article 35.16 are, "as a *matter of law,* the only ones which a party may request that a judge rule upon to disqualify a juror, while the judge may, in accordance with Article 35.03, consider any other excusal factor with or without the prompting of counsel." *Id.* (emphasis in original). Hardship and family responsibilities are excusable grounds under article 35.03. *See Kemp v. State,* 846 S.W.2d 289, 294 (Tex.Crim. App.1992).

Although the trial judge did not state his reason for excusing Harris, the record clearly reflects the trial judge relied on his authority under article 35.03, and not on article 35.16. Harris prompted the trial judge for a personal excuse before the prosecutor exerted his challenge. After the prosecutor challenged Harris, the trial judge corrected the prosecutor's misstatement regarding Harris's aversion to police testimony. Following some discussion, in which appellant expressed her objection to the State's challenge, the trial judge excused Harris. Because the trial judge's decision to excuse venire person Harris for personal hardship was an appropriate exercise of his discretionary authority under article 35.03, we hold that he did not abuse his discretion in excusing Harris. Accordingly, we overrule appellant's second point of error.

### III. Failure to Disclose Impeachment Evidence

■ In her third point of error, appellant contends she was denied the right to confront and cross-examine witnesses, the right to due process, and the right to effective assistance of counsel because the prosecution did not disclose impeachment evidence regarding the criminal history of a State's witness. Appellant filed a pretrial motion requesting the State to provide the criminal records of witnesses, and specifically, the criminal history of Norma Marie Martinez. After hearing argument on the motion, the trial court ordered the State to tender for in camera inspection, its record search on the State's witnesses and particularly on Norma Martinez. A computer search conducted the week before trial revealed no criminal history for Norma Marie Martinez. After the trial court rendered judgment, one of appellant's trial attorneys received information that led him to conduct a separate investigation of Martinez's criminal history. Using the name Maria Norma Martinez, appellant's trial attorney discovered Martinez had been convicted of theft in 1990 and, at the time of trial, had an outstanding warrant for her arrest on a second theft charge. Consequently, appellant filed a motion for new trial claiming newly discovered evidence showed the State failed to disclose exculpatory and impeachment evidence as required by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The trial court denied the motion for new trial.

■ The granting or denying of a motion for new trial lies within the discretion of the trial court. *See Lewis v. State,* 911 S.W.2d 1, 7 (Tex.Crim.App.1995); *State v. Gonzalez,* 855 S.W.2d 692, 696 (Tex.Crim. App.1993). An appellate court does not substitute its judgment for that of the trial court, but rather decides whether the trial court's decision was arbitrary or unreasonable. *Id.* To be entitled to a new trial based on newly discovered evidence, appellant must show there is, in fact, new evidence, both competent and material to the case, the existence of which was unknown to appellant at the time of trial. *See Jones v. State,* 711 S.W.2d 35, 38 (Tex.Crim.App.1986). Second, appellant must show her failure to discover such evidence before trial, or to utilize the evidence, once discovered, at the time of trial, was not a result of any lack of diligence on her part. *Id.* Generally, new evidence that is merely cumulative, corroborative, collateral, or impeaching is rarely of such

weight as likely to bring about a different result. *Id.*

Appellant contends the newly discovered evidence of Martinez's criminal history is material to the outcome of the case, and the State's failure to disclose it deprived her of due process.[2] A prosecutor has an affirmative duty to disclose all material, exculpatory evidence to the defense. *See Lagrone v. State*, 942 S.W.2d 602, 615 (Tex. Crim.App.), *cert. denied*, —— U.S. ——, 118 S.Ct. 305, 139 L.Ed.2d 235 (1997). A prosecutor violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution when he or she fails to disclose material evidence that is favorable to the accused. *See Thomas v. State*, 841 S.W.2d 399, 404 (Tex.Crim.App.1992). Favorable evidence is any evidence, including exculpatory and impeachment evidence, that, if disclosed and used effectively, *may* make the difference between conviction and acquittal. *Id.* (emphasis in original). Evidence is material if it creates a probability sufficient to undermine the confidence in the outcome of the proceeding. *Id.* A reviewing court determines materiality by examining the alleged error in the context of the entire record and in the context of the overall strength of the State's case. *Id.* at 404–05. The reviewing court may consider any adverse effect the nondisclosure might have had on the preparation or presentation of the defendant's case in light of the totality of the circumstances and with an awareness of the difficulty of reconstructing the course of the defense and the trial in a post-trial proceeding. *Id.* at 405.

At the hearing on the motion, the State's investigator testified that he searched for the criminal history of Norma Marie Martinez, the name Martinez signed on her statements to the State. Upon receiving the motion for new trial, the investigator ran a second search under the name Maria Norma Martinez and discovered the theft conviction and a second theft conviction, which occurred subsequent to appellant's trial. The State claimed it had no knowledge of Martinez's conviction until it received the motion for new trial.

Appellant does not dispute the prosecution's unawareness of Martinez's prior conviction or pending charges at trial, but questions the State's diligence in searching its records. The State's investigator testified that he did not search for Martinez's criminal history under any other name except Norma Marie Martinez because she was only a witness and he had no reason to believe she gave an alias. Yet, the Nueces County Sheriff's Department located Martinez's criminal history using the name Maria Martinez and her date of birth. Moreover, Martinez testified that the State never questioned her about her criminal history and State investigators wrote her name incorrectly on police documents.

The record reflects the prosecutor did not deliberately withhold impeachment evidence from appellant. Yet, the record also reflects the State made little effort to discover the information, which it possessed in its own records. Therefore, we find the State breached its affirmative duty to disclose impeachment evidence to which appellant was entitled.

Nevertheless, we do not find the conviction evidence to be material for impeachment purposes. While appellant's trial counsel could have offered Martinez's theft conviction, if disclosed, to impeach her credibility, with jurors, Martinez's inconsistent statements permitted appellant's trial counsel to accomplish the same goal on cross-examination. In a sworn statement to police on the day of the murder, Martinez claimed she saw appellant shoot complainant and run to her vehicle. On cross-examination at trial, however, she admitted that she saw appellant chasing complainant but did not see appellant shoot complainant. Instead, Martinez said she heard a shot and then saw appellant come out of the room, pointing a gun at complainant. She claimed she did not see appellant run to her

---

2. In briefing point of error three, appellant does not separate and sufficiently distinguish between state and federal constitutional issues. Specifically, she does not indicate how her rights under the Texas Constitution exceed or differ from any provided to her under the United States Constitution. Therefore, relying on the language in *Arnold v. State*, 873 S.W.2d 27, 33 n. 4 (Tex.Crim. App.1993), we decline to address any state constitutional issue.

vehicle although she admitted she might have told police that she did on the day of the murder. Martinez also testified she heard appellant yell "bitch" at complainant, but admitted she did not tell police about appellant's epithet in her statement on the day of the incident. Moreover, Martinez described appellant's gun as really big, like a cowboy gun with a long barrel, while the evidence at trial showed the gun to be a snub-nose revolver.

Furthermore, the State's case against appellant was strong. In total, the State offered the testimony of thirty-three witnesses and more than 122 exhibits. Of the eighteen volumes of testimony in the guilt-innocence phase of trial, Martinez's testimony encompasses only fifty-two pages. For the most part, Martinez's testimony was cumulative of the testimony of other witnesses. Although she was the only witness to hear appellant yell "bitch" at complainant, Martinez was one of several who observed appellant chasing complainant while pointing the gun at her. For these reasons, we conclude Martinez's criminal history is not evidence that creates a probability sufficient to undermine the confidence in the outcome of the proceeding.

Appellant also argues that the State's failure to disclose Martinez's criminal record deprived her of the right to cross-examine Martinez and to the effective assistance of counsel.[3] Because evidence of Martinez's conviction was immaterial to the outcome of appellant's trial, we decline to address these arguments. The trial court did not err in overruling appellant's motion for new trial. Appellant's third point of error is overruled.

## IV. Admissibility of Appellant's Written Statement

■■■■ In her fourth and fifth points of error, appellant contends the trial court erred in denying her motion to suppress her written statement in violation of her right to counsel under the Fifth Amendment of the United States Constitution, Article I, Section 10 of the Texas Constitution, and article 38.22 of the Texas Code of Criminal Procedure. At a hearing on a motion to suppress, the trial court is the sole and exclusive trier of fact and judge of the credibility of the witnesses as well as the weight to be given their testimony. *See Green v. State*, 934 S.W.2d 92, 98–99 (Tex.Crim.App.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997); *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). The trial judge may choose to believe or disbelieve any or all of a witness' testimony. *See Allridge v. State*, 850 S.W.2d 471, 492 (Tex. Crim.App.1991). This Court, thus, is not at liberty to disturb any finding that is supported by the record. *See Johnson v. State*, 803 S.W.2d 272, 287 (Tex.Crim.App.1990), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1991); *Atkins v. State*, 919 S.W.2d 770, 773 (Tex. App.—Houston [14th Dist.] 1996, no pet.).

### A. Invocation of Right to Counsel

■■■■ In her fourth point of error, appellant contends her written statement was inadmissible under the Fifth Amendment to the United States Constitution because she unambiguously requested an attorney to assist her in questioning before she surrendered to authorities and the State did not honor her request before obtaining her statement. To effectuate the right against self-incrimination under the Fifth Amendment, police must cease all interrogation once a suspect invokes her right to counsel or until the suspect re-initiates conversation. *See Minnick v. Mississippi*, 498 U.S. 146, 153, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990); *Dinkins v. State*, 894 S.W.2d 330, 350 (Tex.Crim. App.1995). Consequently, when a suspect has invoked her right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that she responded to further police-

---

**3.** We recognize that appellant's third point of error is multifarious. Nevertheless, we address her due process claim because it is the only issue she develops in this point of error. Although appellant cites a few cases addressing the right to cross-examine witnesses, she does not develop an argument regarding her confrontation claim.

Furthermore, appellant cites no authority nor develops any argument in her brief regarding the ineffective assistance of counsel claim. *See Dunn v. State*, 951 S.W.2d 478, 480 (Tex.Crim. App.1997) (finding points that are multifarious and inadequately briefed present nothing for review).

initiated custodial interrogation even if she has been advised of her rights. *See Jones v. State,* 742 S.W.2d 398, 404 (Tex.Crim.App. 1987) (citing *Edwards v. Arizona,* 451 U.S. 477, 484, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)).

■ A person invokes the right to counsel when she indicates that she desires to speak to an attorney or have an attorney present during questioning. *See Dinkins,* 894 S.W.2d at 351. "An invocation must be clear and unambiguous; the mere mention of the word 'attorney' or 'lawyer' without more, does not automatically invoke the right to counsel." *Id.* The right to counsel is not inherent within the Fifth Amendment, but a prophylactic measure provided under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Id.* (addressing issue of ambiguous invocations of right to counsel). Therefore, "[t]he prohibition against continued questioning following an invocation of the right to counsel is 'justified only by reference to its prophylactic purpose.'" *Id.* (quoting *Davis v. U.S.,* 512 U.S. 452, 458, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994)). Accordingly, a court must focus on whether a suspect actually invokes her rights. *Id.* The inquiry is purely objective: whether a reasonable officer in light of the circumstances would understand the statement to be a request for an attorney. *Id.* at 351–52. Consequently, when reviewing allegations of the right to counsel, an appellate court examines the totality of the circumstances surrounding the interrogation and the alleged invocation. *See Dinkins,* 894 S.W.2d at 351.

At the pretrial hearing on appellant's motion to suppress her confession, Sergeant Paul Rivera testified that he instructed "the personnel with the negotiating team to bring appellant to the police station so that we could talk to her." He said upon her arrival, she was placed in an interview room and warned of her constitutional rights. Rivera further stated that appellant voluntarily initialed the warnings read to her from a police form and indicated she understood the rights. Thereafter, appellant gave her written statement. After hearing other testimony and argument, the trial court denied appellant's pretrial motion to suppress her written statement. In its findings of fact and conclusions of law, the trial court found appellant knowingly, intelligently and voluntarily waived her rights and gave a statement to police. During trial, the trial court reconsidered appellant's motion to suppress after admitting audiotapes made during the parking lot standoff and after hearing the testimony of two members of the special negotiation team who facilitated appellant's surrender.

Appellant contends the officers' testimony and the following excerpt of the audiotape of the negotiations reflects her clear and unequivocal invocation of her right to counsel:

YOLANDA SALDIVAR: "Larry, I don't wanna live. I don't wanna live."

OFFICER YOUNG: "Do you wanna talk to your attorney?"

YOLANDA SALDIVAR: (Crying.)

OFFICER YOUNG: "You wanna get—do you want—When you come out of the truck, do you wanna call him, first? Richard? Richard Garza?"

YOLANDA SALDIVAR: (Crying.)

OFFICER YOUNG: "Isn't that—isn't that what you said his name was?"

YOLANDA SALDIVAR: "Yes."

OFFICER YOUNG: "You wanna talk to him, first?"

YOLANDA SALDIVAR: "Yes." (Crying.)

Officer Larry Young, a member of the negotiation team, acknowledged that he offered to call an attorney for appellant, but testified that he did not promise appellant an attorney as soon as she surrendered to police.[4]

---

4. A transcription of the audiotape reflects the extent of appellant's conversation about an attorney with Officer Young as follows:

YOLANDA SALDIVAR: "Larry, I don't wanna live. I don't wanna live."
OFFICER YOUNG: "Do you wanna talk to your attorney?"
YOLANDA SALDIVAR: (Crying.)

OFFICER YOUNG: "You wanna get—do you want—When you come out of the truck, do you wanna call him, first? Richard? Richard Garza?"
YOLANDA SALDIVAR: (Crying.)
OFFICER YOUNG: "Isn't that—isn't that what you said his name was?"
YOLANDA SALDIVAR: "Yes."

Young said he fulfilled all of his promises to appellant except letting her use the phone. Officer Isaac Valencia, another member of the negotiation team, testified that the team offered to call an attorney because appellant "needed to have a hope to talk to somebody else."[5] During negotiations, Valencia talked with Richard Garza, an attorney who had represented appellant's family in other matters. Valencia said Garza was apprehensive about talking to him, but assisted him after Valencia stressed that he was not conducting

a criminal investigation but gathering personal information to build a rapport with appellant. Both officers testified they did not attempt to procure an attorney for appellant after her surrender.

After hearing argument outside the jury's presence, the trial court denied appellant's motion to suppress her written statement. In its findings of fact and conclusions of law, the trial held the negotiations with police during the standoff did not constitute custo-

OFFICER YOUNG: "You wanna talk to him, first?"

YOLANDA SALDIVAR: "Yes." (Crying.)

OFFICER YOUNG: "Okay. Are you—are you ready? Are you ready?"

YOLANDA SALDIVAR: "I'm ready to die."

OFFICER YOUNG: "No, you're photo [sic] ready to do that."

YOLANDA SALDIVAR: "I'm ready to die."

OFFICER YOUNG: "No, baby, you're not ready do that. You're ready to come out of the truck, and I'm ready to come over there and get you and put you in the car and take you to the phone."

YOLANDA SALDIVAR: (Crying.)

OFFICER YOUNG: "And it's your choice, whether you wanna talk to Richard or your mom, first."

YOLANDA SALDIVAR: (Crying.)

OFFICER YOUNG: "I'm so anxious, right, now, I'll dial the phone number for you. You know that?"

YOLANDA SALDIVAR: (Crying.)

OFFICER YOUNG: "You know—Can I come out there, now?"

YOLANDA SALDIVAR: "No."

OFFICER YOUNG: "Huh?"

YOLANDA SALDIVAR: "No."

OFFICER YOUNG: "Why, baby? It's—it's - it's hard to sit in this office over here and—and talk, and I wanna come over and help you out of the truck. I don't want you to hurt yourself."

YOLANDA SALDIVAR: (Crying.)

OFFICER YOUNG: "Let me come over there and—and—and help you get in this car, and then we can go and—and call whoever you want to on the phone."

5. In response to a question regarding how it happened that he promised appellant an attorney, Officer Valencia testified as follows:

A. Again, she needed to have a hope to talk to somebody else, and in this particular case there was a name that had come up, that, again, he claimed to be an attorney that had done business for the family. But on the other hand he was kind of lukewarm about he really wasn't her attorney, but he was her friend, and, so, "Use my name, but no, don't use my name. Just say an attorney says this," and that's where I got her pet name that Selena

would refer to her as Buffy came from this attorney, Richard Garza, I believe.

Q. And he identified himself as a family lawyer or her lawyer or how?

A. That he had done business for the family, but he never said specifically her lawyer, that he had done business for the family, and of course, he was very apprehensive talking with me. But on the other hand, I stressed to him that I was not conducting the criminal investigation, I was only attempting to gather information, personal information, I could use to build rapport, whether with me or Larry Young with her. So this is where he finally broke down and told me, "Well, I know the pet name that Selena would call her is Buffy, and tell her Selena doesn't want Buffy to hurt herself, and that don't use my name, but say her attorney says that to come on out and I'll help you," and that type of stuff.

Q. Did he ever, ever, tell you that he was representing her?

A. No.

Q. After the situation ended when she was taken into custody, did you get her a lawyer?

A. No.

Q. Why not?

A. Again, my responsibility, my role on the scene was hostage negotiator and beyond that that's not my prerogative nor my responsibility. My responsibility ended with the successful surrender of the offender, and then beyond that of course the regrouping of our equipment and quick debriefing. By then we were all exhausted and so it was good enough to get our equipment picked up.

Q. Where was she turned over to after the hostage negotiation team had successfully gotten her out of the truck?

A. From what I recall or remember she was removed from the scene by a patrol car, and in the patrol car I believe it was staffed with three SWAT Team members. It was going to be four, but the lieutenant on the unit, on the scene the SWAT Team on the scene wanted Larry Young in there with her and that would help calm her down and facilitate the transport to the station.

Q. Did Larry Young go with her then?

A. Yes.

dial interrogation and appellant never clearly and unambiguously invoked her right to counsel during the standoff.

Reviewing the record in light of the totality of the circumstances surrounding the parking lot standoff, we find the record supports the trial court's findings of fact and conclusions of law. The record reflects that appellant did not clearly and unambiguously invoke her Fifth Amendment right to counsel as provided in *Miranda*. At most, the negotiation team offered her an opportunity to talk with an attorney.

Moreover, appellant did not invoke the right to counsel during custodial interrogation as required by *Miranda*. *See Green v. State*, 934 S.W.2d 92, 97 (Tex.Crim.App. 1996) (stating invocation of Fifth Amendment right requires at minimum some expression of desire for the assistance of counsel in dealing with custodial interrogation by the police), *cert. denied*, —— U.S. ——, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997). Although appellant was clearly surrounded by police and could not escape the parking lot during the standoff, she was armed and not restrained. The communications between the negotiation team were clearly not intended to elicit an incriminating response. *See Cooks v. State*, 844 S.W.2d 697, 735 (Tex.Crim.App.1992) (stating interrogation connotes a "calculated" practice on the part of a government official in an attempt to evoke an incriminating response). The negotiations regarding her surrender, therefore, cannot be characterized as custodial interrogation. *See Hernandez v. State*, 819 S.W.2d 806, 815 (Tex.Crim.App. 1991). Because she did not invoke her right to counsel, police officers acted properly by providing her with the *Miranda* warnings and obtaining a waiver of her rights before initiating custodial interrogation at the police station. Accordingly, we overrule appellant's fourth point of error.

## B. Misstatement of Statutory Warning Before Interrogation

In her fifth point of error, appellant asserts her confession is involuntary and therefore, inadmissible under article 38.22 of the code of criminal procedure, the Fifth Amendment to the United States Constitution, and Article I, Section 10 of the Texas Constitution because members of the negotiation team told her that her statement could be used for her. Appellant claims Officers Young and Valencia violated these provisions when they repeatedly told her during negotiations that they wanted to help her, that it was in her best interest to publicly tell her story, and that the Lord, Himself, wanted her to publicly tell her story. In spite of the inappropriateness of these warnings, appellant asserts, the trial court admitted her written statement over objection.

Appellant, however, did not urge an article 38.22 objection or a constitutional objection to the admission of her statement at trial on the grounds that Officers Young and Valencia misstated the warnings before or during custodial interrogation. Appellant urged an article 38.22 objection at the pretrial hearing on the motion to suppress her written statement regarding proceedings that occurred after the police administered the warnings at the police station. The trial court heard no evidence regarding the standoff negotiations at the pretrial hearing.

Appellant voiced another objection to the admissibility of her statement after the trial court admitted the audiotapes and the testimony of Officers Young and Valencia. At the hearing outside the jury's presence, appellant objected to the admissibility of the statement on the ground that she invoked her right to counsel during the standoff and the State dishonored her request. The trial court entertained no objection and heard no argument regarding the officers' allegedly inappropriate warnings at this hearing. Finally, appellant reurged all of her previous objections when the trial court admitted her written statement. Because appellant did not object at trial on the ground she now asserts on appeal, she waives review of this point of error. *See Serrano v. State*, 936 S.W.2d 387, 390 (Tex.App.—Houston [14th Dist.] 1996, pet ref'd) (stating even constitutional errors may be waived by failing to object at trial). Accordingly, we overrule appellant's fifth point of error.

## V. Evidence of Extraneous Misconduct

In her sixth through eleventh points of error, appellant complains of trial error in

admitting evidence of extraneous misconduct and in failing to give the jury a limiting instruction regarding extraneous misconduct. In her seventeenth point of error, appellant contends she is entitled to a new trial because the documents related to the extraneous offense were lost or destroyed without her fault.

## A. Admissibility of Extraneous Misconduct Evidence

■ An appellate court reviews the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *See Green,* 934 S.W.2d at 102; *Montgomery v. State,* 810 S.W.2d 372, 379–80 (Tex.Crim.App. 1990) (opinion on reh'g). Therefore, as long as the trial court's ruling is within the zone of reasonable disagreement, the appellate court will not intercede. *See Montgomery,* 810 S.W.2d at 391.

■ In point of error six, appellant contends the trial court abused its discretion in admitting evidence of extraneous misconduct because the State did not give adequate, timely notice as required by rule 404(b) of the Texas Rules of Criminal Evidence. Former rule 404(b) prohibits the admission of evidence of extraneous offenses committed by the defendant for the purpose of proving her character by showing she acted in conformity with that character on the occasion in question. *See* Tex.R.Crim. Evid. 404(b), 49 TEX. B.J. 223 (1986) (current version at TEX.R. EVID. 404(b)); *see Santellan v. State,* 939 S.W.2d 155, 168 (Tex.Crim.App. 1997). Evidence of extraneous misconduct is admissible, however, to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident provided that upon timely request the State provides reasonable notice in advance of trial of its intent to introduce evidence of the extraneous misconduct in its

case-in-chief. *See* Tex.R. Evid. 404(b), 49 TEX. B.J. 223 (1986).

At a pretrial hearing on discovery motions held two months before trial, appellant asked the trial court to rule on her rule 404(b) motion requesting notification of the State's intent to introduce evidence of an extraneous offense in its case-in-chief. At that time, the State indicated its intent to introduce evidence that Quintanilla thought appellant was embezzling funds and confronted her about it. Because the record reflects that appellant received reasonable notice as required by rule 404(b),[6] we find the trial court did not abuse its discretion in admitting extraneous offense evidence. Appellant's sixth point of error is overruled.

■ In her eighth point of error, appellant contends the trial court abused its discretion in admitting evidence of extraneous misconduct during the guilt-innocence phase of the trial because the evidence was irrelevant and prejudicial, and the State did not prove embezzlement beyond a reasonable doubt. To preserve error in the admission of extraneous offenses under the rules of evidence, the opponent of extraneous offense evidence must first object under rule 404(b). *See Santellan,* 939 S.W.2d at 168; *Harrell v. State,* 884 S.W.2d 154, 161 n. 14 (Tex.Crim. App.1994); *Montgomery,* 810 S.W.2d at 387. The State must then "show the proffered evidence is relevant apart from its tendency to show that the defendant is a criminal." *Harrell,* 884 S.W.2d at n. 14. At the defendant's request, the trial court should then require the State to articulate the limited purpose for which the evidence is offered. *Id.* In making a determination as to the relevancy of the evidence, the trial court must, under rule 104(b) of the rules of criminal evidence, determine, "at the proffer of the evidence, that a jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense."

---

6. The motion and the trial court's ruling are not in the record before this court. Furthermore, appellant's request for notification does not appear in any of the other motions filed with the trial court. *See Espinosa v. State,* 853 S.W.2d 36, 38–39 (Tex.Crim.App.1993) (discussing requirements for motion and need for ruling on motion). Moreover, in her Motion for Preliminary Deter-

mination of Admissibility of Extraneous Offenses, which the trial court heard at the same time as the rule 404(b) notification motion, appellant asserted that "[t]he State has informed defense counsel in accordance of rule 404(b) Tex.R. Cr. Ev. [sic] of its intent to introduce evidence of alleged extraneous offenses and bad acts."

*Id.* at 160; Tex.R.Crim. Evid. 104(b), 49 TEX. B.J. 221 (1986) (current version at TEX.R. EVID. 104(b)). If the trial court determines the evidence is relevant, the defendant must further object under rule 403 and obtain a ruling as to whether the probative value of the evidence is substantially outweighed by its prejudicial effect. *See* Tex.R.Crim. Evid. 403, 49 TEX. B.J. 223 (1986) (current version at TEX.R. EVID. 403); *Harrell*, 884 S.W.2d at n. 14.

Appellant did not raise a rule 404(b) or a rule 403 objection when Quintanilla testified

7. Before trial, appellant sought a ruling on the admissibility of extraneous offense evidence. At a hearing on Defendant's Motion for Preliminary Determination of Admissibility of Extraneous Offenses, the trial court questioned whether Quintanilla's testimony regarding his belief that appellant was embezzling funds was evidence of an extraneous offense, and if so, why his testimony was relevant. The State argued that Quintanilla's testimony was not evidence of an extraneous offense because "there is a difference ... between thinking somebody is doing it and somebody *actually doing it.*" The State assured the trial court that it would not introduce any evidence about funds being embezzled. The State further argued that evidence regarding Quintanilla's belief that appellant was embezzling funds and his subsequent confrontation of appellant were relevant to show appellant's motive leading up to the shooting.

Appellant argued that Quintanilla's testimony was evidence of an extraneous offense. She urged the trial court to conduct a hearing outside the jury's presence and to determine whether the State proved appellant committed embezzlement beyond a reasonable doubt. She further urged the trial court to determine if the evidence was relevant, and to weigh the relevancy of the evidence against its potential harm. After a brief recess, the trial court stated that it agreed with the State and would allow the "kinds of evidence" the State was talking about. Appellant then requested production of the records upon which Quintanilla based his belief, the same records appellant requested from Quintanilla in her subpoena duces tecum. Although the State said it did not have possession of the records and had not looked at the records in preparation for trial, the trial court ordered the State to inquire if the financial records had been turned over to the police department.

8. Quintanilla testified that he confronted appellant with letters from parents whose children had not received fan club packages. When asked if he did anything more as a result of further investigation, Quintanilla said, "I went to San Antonio and I recovered all the—." Appellant's trial attorney objected on the grounds that she had been denied discovery of the fan club rec-

at trial that he thought appellant was embezzling funds from the Selena fan club.[7] Instead, appellant objected that she had been denied discovery of the records supporting Quintanilla's testimony.[8] Appellant did not raise a rule 404(b) or rule 403 objection to the testimony of Chris Perez, complainant's husband, who testified that he and complainant removed appellant from complainant's checking accounts because they did not trust her. Moreover, appellant did not object on the basis of rules 404(b) and 403 to the testimony of complainant's sister, Suzette Ar-

ords. Appellant's trial attorney reminded the trial court that at the pretrial hearing the prosecutor stated he would ask Quintanilla if he suspected embezzlement. Appellant's trial attorney complained, "They're going into details of this and we don't have any records to look at. We tried to find them ahead of time." The trial court ruled, "At this time, I don't sustain the objection to this line of questioning, but any details about it I would."

When the jury returned, Quintanilla testified, without objection, that he suspected appellant was taking money from the fan club. He confronted appellant with his suspicion and asked her to bring all the records to his office. Then Quintanilla, complainant, and complainant's sister, Suzette Arriaga, confronted appellant in Quintanilla's office because Quintanilla "had recovered the records for the fan club, and we found proof that she was stealing." Once again, appellant's trial attorney objected that Quintanilla had been testifying about records that she had been trying to recover. The trial court sustained the objection and instructed the jury to disregard the testimony.

At a hearing outside the jury's presence, appellant once again objected that she had been denied recovery of the fan club records. Quintanilla testified that he based his suspicion of embezzlement on forged checks and a letter to Bank One from appellant. Appellant's trial attorney testified that appellant had not received a copy of the fan club records in spite of her efforts to discover the documents. He later tendered to the trial court the documents she had received as Court Exhibit 1. The prosecutor stated he did not intend to question Quintanilla about the records, but would continue with questions about the meeting where Quintanilla confronted appellant.

Quintanilla, however, testified that he showed appellant some documents. Appellant's trial attorney objected, requesting permission to see the documents. The trial court overruled the objection. Quintanilla then testified without objection that he questioned appellant about the documents and told her that he was going to the police and have them investigate her for embezzlement.

riaga. Arriaga testified, over a hearsay objection, that complainant intended to fire appellant because she thought appellant was embezzling funds from complainant's company.[9] Consequently, appellant failed to preserve error to the admission of extraneous offense evidence. Appellant's eighth point of error is overruled.

■ In points ten and eleven, appellant contends the trial court erred by not giving the jury a limiting instruction regarding extraneous misconduct as required by rule 105(a) of the Texas Rules of Criminal Evidence and by refusing her request to instruct the jury in the court's charge as to the limited use of the extraneous offense evidence and the standard of proof it must apply in considering the evidence. Former rule 105(a) requires the trial court, upon request, to restrict evidence to its proper scope and to instruct the jury accordingly, when evidence is admitted for a limited purpose. *See* Tex.R.Crim. Evid. 105(a), 49 Tex. B.J. 221 (1986) (current version at Tex.R. Evid. 105(a)); *Abdnor v. State*, 871 S.W.2d 726, 738 (Tex.Crim.App.1994) (stating when extraneous offenses are admitted for a limited purpose, defendant is entitled, on timely request, to instruction by the trial judge to the jury limiting its consideration of the extraneous offenses to those purposes for which they are admitted). Moreover, "if the defendant so requests at the guilt/innocence phase of trial, the trial court must instruct the jury not to consider extraneous offense evidence admitted for a limited purpose unless it believes beyond a reasonable doubt that the defendant committed the extraneous offense." *George v. State*, 890 S.W.2d 73, 76 (Tex.Crim.App.1994).

■ A party opposing evidence, nevertheless, has the burden of objecting and requesting a limiting instruction at the introduction of the evidence. *See Garcia v. State*, 887 S.W.2d 862, 878–79 (Tex.Crim.App.1994). "Once evidence is received without a proper limiting instruction, it becomes part of the general evidence in the case and may be used as proof to the full extent of its rational

persuasive power." *Id.* Once admitted, evidence that might have been inadmissible for certain purposes if the proper objection had been made, is not limited in its use. *Id.*

In this case, appellant did not make a proper objection to the admission of unadjudicated extraneous offense evidence and did not request a limiting instruction when the State proffered the evidence at the guilt-innocence phase of trial. Therefore, appellant forfeited any error and the trial court admitted the evidence as probative of any question to which it was relevant. Thus, the trial court did not err by not charging the jury with a limiting instruction regarding extraneous offense evidence. We overrule appellant's tenth and eleventh points of error.

■ In point of error nine, appellant maintains the trial court erred in admitting harmful hearsay regarding extraneous misconduct in violation of her right to confront and cross-examine witnesses as guaranteed by the United States and Texas Constitutions. Appellant specifically complains about the admissibility of Perez's statement that complainant did not trust appellant and Arriaga's testimony that complainant was going to fire appellant because complainant thought appellant was embezzling funds from her company. The State contends appellant did not preserve error in both instances. In the alternative, the State contends Arriaga's testimony was admissible as an exception to the hearsay rule.

On direct examination, Perez testified that he and complainant removed appellant as a signatory to complainant's business checking accounts. When asked why they removed appellant as a signatory, Perez testified, over a hearsay objection, that "Selena and I didn't trust her." Then without further objection, Perez testified as follows:

Q. (By Mr. Valdez) Why didn't you trust her?

A. Because there was a lot of things that were coming up, you know, unaccounted for; and we couldn't get an explanation

---

9. Without objection, Arriaga also testified that after the meeting with appellant, Arriaga called appellant a liar and a thief.

that we were satisfied with for some of those things.

Q. And do you remember approximately how long before she was killed, approximately?

A. That we did that?

Q. That you removed her from the accounts?

A. Maybe about two weeks.

Q. Did you fire Yolanda Saldivar?

A. Yes, we did. I remember there was a phone conversation where Selena said that she couldn't trust her anymore. It was after that meeting that took place at the shop.

■ Generally, a party waives error regarding improperly admitted evidence if the same evidence is later admitted without objection. *See Rogers v. State*, 853 S.W.2d 29, 35 (Tex.Crim.App.1993); *House v. State*, 909 S.W.2d 214, 216 (Tex.App.—Houston [14th Dist.] 1995) (stating any error in allowing inadmissible evidence is cured when the same evidence comes in without objection elsewhere in trial), *aff'd*, 947 S.W.2d 251 (Tex.Crim.App.1997). In this case, Perez repeated his previous statement that complainant did not trust appellant without objection. Therefore, it is of no consequence whether Perez's testimony [10] constituted inadmissible hearsay because appellant did not properly preserve error.

■ On the other hand, appellant preserved error as to her claims that Arriaga's testimony constituted inadmissible hearsay.[11] Following Perez's testimony, Arriaga testified about the meeting in Quintanilla's office when Quintanilla confronted appellant about

the fan club discrepancies. Arriaga testified she spoke with complainant in her home a week or so after the meeting. When the prosecutor asked Arriaga about her conversation with complainant, appellant objected to the testimony as hearsay and requested a limiting instruction. The prosecutor argued Arriaga's testimony was an exception to the hearsay rule as a statement of complainant's emotional intent or state of mind. Outside the jury's presence, the trial court heard argument from counsel regarding the testimony. Appellant's trial attorney argued the testimony was clearly hearsay as follows:

> "It's clearly a hearsay statement of Selena. Selena's not here for us to cross-examine. It is not a present sense about the offense itself, which is when that rule can come into play. Going to fire doesn't have anything to do with the shooting and I object. We can't cross-examine Selena, she's not here, she's not available as a witness."

Both sides agreed the statement, "I'm going to fire Yolanda," was a statement of what complainant was going to do, although they disagreed whether the statement went to complainant's state of mind. The trial court overruled the objection. Arriaga then testified that complainant "said that she was going to fire Yolanda because she thought she was embezzling from her company."

Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex. R.Crim. Evid. 801(d), 49 Tex. B.J. 229 (1986) (current version at Tex. R. Evid. 801(d)); *Jackson v. State*, 889 S.W.2d 615, 616 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd).

---

10. *But see Vann v. State*, 853 S.W.2d 243, 249 (Tex.App.—Corpus Christi 1993, pet. ref'd) (stating "a victim's simple statement that he does not trust a person may be admissible under Rule 803(3)"); *Green v. State*, 839 S.W.2d 935, 942 (Tex.App.—Waco 1992, pet. ref'd) (noting "Texas precedent allows state-of-mind declarations to be admitted to prove the joint conduct of the declarant and another").

11. The State contends appellant did not preserve error regarding her claim that the second clause of Arriaga's statement was inadmissible hearsay because she voiced only a general objection to the testimony at trial. In most cases, a general objection to evidence, part of which is admissible

and part of which is not, does not preserve error. *See Johnson v. State*, 747 S.W.2d 451, 453 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd). To preserve error, the objecting party must point out the part of the challenged evidence that is not admissible. *Id.* Still, "[i]dentifying challenged evidence as hearsay or as calling for hearsay should be regarded by courts at all levels as a sufficiently specific objection, except under the most unusual circumstances." *Lankston v. State*, 827 S.W.2d 907, 910 (Tex.Crim.App.1992). In this case, appellant's general hearsay objection to Arriaga's statement was sufficient to preserve error.

Hearsay is inadmissible at trial except as provided by statute or by the rules of criminal evidence. *See* Tex.R.Crim. Evid. 802, 49 TEX. B.J. 230 (1986) (current version at TEX.R. EVID. 802); *Long v. State*, 800 S.W.2d 545, 547 (Tex.Crim.App.1990). Former rule 803(3) of the rules of criminal evidence provides for the admissibility of a "statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health)"; it does not permit a statement of memory or belief to prove the fact remembered or believed. Tex.R.Crim. Evid. 803(3), 49 TEX. B.J. 230 (1986) (current version at TEX.R. EVID. 803(3)).

■ In this case, Arriaga's statement consists of two distinct clauses. In the first, Arriaga states complainant told her she was going to fire appellant. Although appellant specifically objected to this clause at trial on the ground that the statement did not go to complainant's state of mind, she conceded the clause was a statement of what complainant was going to do. "Texas courts have admitted as an exception to the hearsay rule state of mind statements looking into the future." *Norton v. State*, 771 S.W.2d 160, 165 (Tex.App.—Texarkana 1989, pet. ref'd) (citations omitted); *see also Blount v. Bordens, Inc.*, 892 S.W.2d 932, 937 (Tex.App.—Houston [1st Dist.] 1994) (noting "[c]ourts have favored the admission of statements that show the declarant's then-existing intent to perform an act in the future"), *rev'd on other grounds*, 910 S.W.2d 931 (Tex.1995). Moreover, complainant's intent to terminate appellant's employment was relevant to show the state of the relationship between complainant and appellant at the time of the shooting and to establish a motive for the shooting. Therefore, the statement was admissible as a state-of-mind exception to the hearsay rule.

■ The second clause of Arriaga's statement, that complainant thought appellant was embezzling from her company, does not fall within the rule 803(3) exception. Instead, the clause denotes complainant's belief about appellant's past actions, which rule 803(3) specifically prohibits. *See* Tex.R.Crim. Evid. 803(3), 49 TEX. B.J. 230 (1986) (current version at TEX.R. EVID. 803(3)).

Therefore, the trial court abused its discretion in admitting the second clause of Arriaga's statement. Nevertheless, our review of the record in its entirety leads us to conclude that the error did not affect a substantial right of the appellant. *See* TEX.R.APP. P. 44.2(b); *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *See King*, 953 S.W.2d at 271 (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

There are several reasons the admission of Arriaga's statement is harmless. First, her testimony regarding complainant's belief that appellant was embezzling funds was brief. The State did not offer any documentary evidence to support Arriaga's embezzlement allegation and did not pose any additional questions to Arriaga regarding the allegation.

Second, any potential harm was defused by other evidence, which the trial court admitted without proper objection. For instance, Quintanilla testified that he confronted appellant in complainant's presence about discrepancies in fan club records and his intent to pursue the matter legally. Perez also testified that he and complainant did not trust appellant because appellant could not give an adequate explanation to their questions regarding business matters. He further testified that complainant fired appellant.

Third, the State did not emphasize Arriaga's statement in closing argument at the guilt-innocence phase of trial. Instead, the prosecutor recounted Arriaga's testimony as follows:

> Also, Suzette testified to you that that [sic] Saturday before Selena was over for dinner, over at her house, and Selena told her that she was planning to fire the defendant because she thought that something was going on. But there was some evidence that she needed to finish that business in Mexico.

Even if the jurors considered Arriaga's statement, it is unlikely they would have placed any substantial weight on it. Accordingly,

the admission of this evidence was not substantial or injurious.

■ Appellant, nevertheless, contends the admission of Perez's and Arriaga's testimony violated her rights under the Confrontation Clause of the United States and the Texas Constitutions. Hearsay, even if admissible under one of the evidentiary exceptions, may violate the Confrontation Clause of the Sixth Amendment to the United States Constitution and Article I, Section 10, of the Texas Constitution. *See Idaho v. Wright,* 497 U.S. 805, 817, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) (holding unless hearsay evidence either "falls within a firmly rooted hearsay exception" or is supported by a "showing of particularized guarantees of trustworthiness," it is inadmissible under the Confrontation Clause of the Sixth Amendment); *Gonzales v. State,* 818 S.W.2d 756, 762–63 (Tex.Crim.App.1991) (noting Article I, Section 10, of Texas Constitution may afford greater right of confrontation than does Sixth Amendment to United States Constitution); *Judd v. State,* 923 S.W.2d 135, 138–39 (Tex.App.—Fort Worth 1996, pet. ref'd) (noting federal and state protection of confrontation).

Appellant, however, objected at trial on the ground of hearsay, not on the ground that the admission of hearsay violated her right of confrontation under either the state or federal constitutions. Therefore, appellant did not preserve error for appellate review. *See Serrano,* 936 S.W.2d at 390. Accordingly, we overrule appellant's ninth point of error.

## B. Discovery of Extraneous Offense Evidence

■ In point of error seven, appellant contends the trial court abused its discretion and violated article 39.14 of the code of criminal procedure by denying her pretrial request for discovery of Selena fan club records, specifically those Quintanilla acquired shortly before complainant's death from the current fan club president. Appellant also argues the trial court erred by overruling her request for production of the documents as required by rule 611 of the rules of criminal evidence when Quintanilla testified about fan club records at trial. Because she was de-

nied discovery of these documents, appellant claims she was denied due process of law, the right to confront and cross-examine witnesses, and the effective assistance of counsel when Quintanilla testified he believed appellant was embezzling funds from the fan club.

■ A defendant in a criminal trial does not have a general right to discovery of evidence in possession of the State. *See Kinnamon v. State,* 791 S.W.2d 84, 91 (Tex. Crim.App.1990), *overruled on other grounds by Cook v. State,* 884 S.W.2d 485 (Tex.Crim. App.1994). Article 39.14, however, provides limited discovery, independent of the constitutional right of access to exculpatory evidence. *See id.* Nevertheless, decisions involving pretrial discovery of evidence which is not exculpatory, mitigating, or privileged are within the discretion of the trial court. *See id.*

Article 39.14 provides that upon a timely motion showing good cause and notice to the other party, the trial court may order the State to provide discovery of designated documents, papers, written statements of the defendant, books, accounts, letters, photographs, objects, or tangible things not privileged, which constitute or contain evidence material to any matter involved in the action and which are in the possession, custody, or control of the State or any of its agencies. *See* TEX.CODE CRIM. PROC. ANN. art. 39.14 (Vernon 1979). In this case, the trial court permitted appellant and the State limited discovery of complainant's business records that were in Quintanilla's possession by means of a subpoena duces tecum. At the trial court's request, Quintanilla turned over two boxes of business records to his attorney who remitted the boxes to the State. Quintanilla stated he thought the fan club records were in one of the boxes. The trial court inspected the boxes in camera and disclosed several documents to both parties, but did not disclose the fan club records to either party. Appellant tendered the documents in her possession to the trial court as Court Exhibit 1, but neither party ever offered the documents at trial. The undisclosed documents remaining in the two boxes after the trial court's inspection were not offered into

evidence or placed in the trial court's file and are not before this Court.

■ As a general rule, evidence willfully withheld from disclosure under a discovery order should be excluded from evidence. *See Pena v. State,* 864 S.W.2d 147, 149 (Tex. App.—Waco 1993, no pet.) (noting same holding in *Hollowell v. State,* 571 S.W.2d 179, 180 (Tex.Crim.App. [Panel Op.] 1978)). There is no evidence the State willfully withheld fan club records from appellant. Moreover, there is no evidence the State ever possessed the records or had access to the records, apart from those the trial court disclosed to appellant. Instead, the record reflects that the trial court exerted its discretion in providing limited discovery of complainant's business records after reviewing the content of the boxes in camera. Because the documents and records were Quintanilla's private papers and not part of the State's file, we cannot say the trial court abused its discretion in disclosing the documents in Court Exhibit 1 to both parties and declining to disclose others.

■ Appellant also contends the trial court abused its discretion in denying her request for production of Selena fan club records when Quintanilla testified at trial. Former rule 611 of the Texas Rules of Criminal Evidence provides when a "witness uses a writing to refresh his memory for the purpose of testifying either while testifying or before testifying, an adverse party is entitled to have the writing produced at the hearing to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness." Tex.R.Crim. Evid. 611, 49 Tex. B.J. 228 (1986) (current version at Tex.R. Evid. 612). Nevertheless, appellant is only entitled to fan club records if Quintanilla actually used the records to refresh his memory. *See Pondexter v. State,* 942 S.W.2d 577, 582 (Tex.Crim.App.1996), *cert. denied,* — U.S. —, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997). In this case, there is no evidence that Quintanilla used the fan club records to refresh his memory during or before his testimony. Outside the jury's presence, Quintanilla testified about the specific documents he thought were proof that

appellant was embezzling funds, but he never stated he used those documents to refresh his memory at any time. Therefore, appellant's contention under rule 611 must fail. Because the trial court did not abuse its discretion in denying appellant's pretrial discovery request for fan club records and her request for the documents during trial, we overrule appellant's seventh point of error.

### C. Limiting Instruction Extraneous Offense

■ In her twelveth point of error, appellant alleges the trial court did not properly inform the jury regarding the voluntariness of her conduct by overruling her objection to paragraph six of the jury charge and by refusing a requested instruction on the issue. "When reviewing charge errors, an appellate court must undertake a two-step review: first, the court must determine whether error actually exists in the charge, and second, the court must determine whether sufficient harm resulted from the error to require reversal." *Abdnor v. State,* 871 S.W.2d 726, 732 (Tex.Crim.App.1994).

In Defendant's Objections to the Charge, appellant specifically objected to paragraph six of the court's charge, which applies the law to the facts of the case.

Now, if you believe from the evidence beyond a reasonable doubt that YOLANDA SALDIVAR on or about March 31, 1995, in Nueces County, Texas [sic] did then and there intentionally or knowingly cause the death of an individual, Selena Quintanilla Perez, by shooting Selena Quintanilla Perez with a firearm or that the defendant on or about March 31, 1995, in Nueces County, Texas [sic] did then and there with the intent to cause serious bodily injury to an individual, Selena Quintanilla Perez, do the act of shooting Selena Quintanilla Perez with a firearm; that this act was clearly dangerous to human life; and that this act caused the death of Selena Quintanilla Perez, but you further find from the evidence, or you have a reasonable doubt thereof, that the defendant did not voluntarily engage in said conduct as that term has been defined above, then you will find the defendant not guilty.

Appellant argued the paragraph did not adequately apply the law to the facts as proven in the case because it did not limit the jury's determination of voluntary conduct to her specific conduct at the time the gun discharged. Appellant asserted that the facts reflected, at the time of the fatal shot, she was threatening suicide by holding a loaded, cocked revolver to her head and the gun discharged as she waved it toward the door in her motel room.

Appellant requested the following instruction regarding voluntariness of her conduct:

> You are instructed that a person commits an offense only if she voluntarily engages in conduct, including an act, an omission or possession. Conduct is not rendered involuntary merely because the person did not intend the results of her conduct.
>
> Now, if you believe from the evidence beyond a reasonable doubt that on or about the 31st day of March, 1995, in Nueces County, Texas, that Selena Quintanilla Perez, suffered injuries from a firearm and that she died as a result thereof, but you further find from the evidence, or you have a reasonable doubt thereof, that YOLANDA SALDIVAR, while threatening suicide and holding a loaded, cocked firearm to her own head, waved the gun toward the door and in doing so the firearm involuntarily discharged thereby causing the injuries to Selena Quintanilla Perez, then you will find the defendant not guilty.

The trial court overruled the objection to the charge and refused the requested instruction.

On appeal, appellant asserts paragraph six is defective because it informs the jury not to consider voluntariness unless and until it is convinced appellant acted with the intent or knowledge that the death would occur, thus precluding a juror wavering on intent from considering the voluntariness issue. Appellant claims her requested instruction cures the defect because "it informs the jury that if it believes the death occurred, it may consider the voluntariness of the act which caused the death."

Proof of both a culpable mental state and a criminal act, committed voluntarily, are necessary to support criminal liability. *See Alford v. State,* 866 S.W.2d 619, 622 (Tex.Crim.App.1993); *see also* TEX. PENAL CODE ANN. §§ 6.01; 6.02 (Vernon 1994). "[T]he issue of the voluntariness of one's conduct, or bodily movements, is separate from the issue of one's mental state." *Adanandus v. State,* 866 S.W.2d 210, 230 (Tex. Crim.App.1993). Only if the evidence raises an issue regarding the voluntariness of the conduct charged must the trial court instruct the jury to acquit if there is reasonable doubt as to whether she voluntarily engaged in the conduct of which she is accused. *See Brown v. State,* 955 S.W.2d 276, 280 (Tex.Crim.App. 1997).

In this case, the trial court did not err in instructing the jury in paragraph six of the charge and in refusing appellant's requested instruction. The record reflects the State charged appellant with murder by shooting complainant with a firearm. The trial court instructed the jury to find appellant guilty if it found beyond a reasonable doubt that appellant committed the act of shooting complainant with a firearm with the requisite mental state. It further instructed the jury to acquit appellant if it found she did not voluntarily shoot complainant with a firearm. The charge did not condition the jury's consideration of the voluntariness of the act of shooting complainant on whether it also found appellant had the culpable mental state to commit the act. Appellant's requested instruction, on the other hand, summarizes facts derived from trial testimony, which article 36.14 specifically prohibits. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.1998). Accordingly, we overrule appellant's twelveth point of error.

### D. Lost Exhibits

In her seventeenth point of error, appellant contends she is entitled to a new trial because original documents, specifically those related to the extraneous offense of embezzlement tendered to the trial court at a pretrial hearing for in camera inspection, have been lost or destroyed without her fault. At the time of appellant's trial, Rule 50(e) of

the Texas Rules of Appellate Procedure provided as follows:

> When the record or any portion thereof is lost or destroyed it may be substituted in the trial court and when so substituted the record may be prepared and transmitted to the appellate court as in other cases. If the appellant has made a timely request for a statement of facts, but the court reporter's notes and records have been lost or destroyed without appellant's fault, the appellant is entitled to a new trial unless the parties agree on a statement of facts.

Tex.R.App. P. 50(e), 49 TEX. B.J. 345 (1986) (current version at TEX.R.APP. P. 34.5(e), 34.6(f)); *Gomez v. State*, 962 S.W.2d 572, 574 (Tex.Crim.App.1998).

Appellant believed the State planned to charge her with embezzlement or introduce evidence at the murder trial that she was embezzling funds from the Selena fan club. To prepare her defense, appellant filed a discovery motion requesting the State to produce documents and papers that the State obtained from appellant, and records, documents, or summaries upon which a claim can be made that appellant was embezzling money from complainant. She sought the production of similar documents from complainant's father, Abraham Quintanilla, by means of a subpoenas duces tecum.

Quintanilla filed a motion to quash the subpoenas. After an evidentiary hearing, the trial court ordered Quintanilla to turn over records regarding Selena business entities to the trial court. Quintanilla turned over two boxes of documents to his attorney, who remitted the boxes to the trial court.

A few weeks later, at a hearing on another motion, the trial court granted appellant's request that the State produce documents that were obtained from appellant, except for papers belonging to Quintanilla. At the same hearing, the trial court denied appellant's request for documents or summaries upon which a claim could be made that appellant was embezzling money. Appellant then requested the trial court to seal the two boxes of documents obtained from Quintanilla if the court was not going to inspect the documents. The trial court took the request under consideration and indicated that it would inspect, in camera, the records from Quintanilla. A month later, at another pretrial hearing, the trial court indicated that it had reviewed two boxes of Quintanilla's documents and would turn over one or more documents to the State and to appellant.

At trial, Quintanilla testified he believed appellant was embezzling funds from the Selena fan club and confronted her about his suspicions. Outside the presence of the jury, Quintanilla stated he based this belief on a letter appellant had written to Bank One of San Antonio and on forged checks, which were payable to appellant. He said he gave the fan club records to his attorney and he thought his attorney gave them to the trial court. He further stated that of the two boxes turned over to the court, one box contained the checks and the letter appellant wrote and the other box contained records of another Selena business entity.

Under oath, one of appellant's trial attorneys testified appellant had not received Selena fan club records, although appellant had received some records of another Selena business entity. The trial court stated it had inspected the two boxes of documents on two occasions and turned over to appellant all matters to which the trial court believed she was entitled. The trial court also indicated it reviewed other fan club records that it declined to turn over to appellant. Following a brief recess, appellant's trial counsel tendered the records that the trial court had provided to appellant as Court Exhibit 1, but the documents were not admitted into evidence.

The trial court sentenced appellant on October 25, 1995. Appellant filed a Motion for New Trial and Arrest of Judgment on November 22, 1995, alleging she was denied the effective assistance of counsel because the trial court refused to allow discovery of financial records relating to allegations of embezzlement. On December 5, 1995, Quintanilla appeared on a television show with the forged checks and the Bank One letter to support his claim that appellant was embezzling funds from the Selena fan club. A videotape of the television program and an English translation of the transcript of the

program were admitted as defense exhibits. The trial court denied the motion.

On August 3, 1996, appellant filed with this Court her third motion to supplement the record with the originals of all sealed records that were produced by the State and complainant's father for in camera inspection. On August 8, 1996, this Court ordered the trial court to certify and transmit (1) all sealed records produced by the State and by complainant's father for in camera inspection and (2) all records relating to embezzlement charges, which the trial court turned over to appellant and were admitted as Court Exhibit 1. The trial court clerk informed this Court that appellant's criminal file and exhibit file did not contain the documents requested. On October 15, 1996, appellant filed a motion to supplement the record with affidavits of various court personnel stating the sealed records produced for in camera inspection were not in the trial court's possession. Appellant alleged the documents had been lost or destroyed without her fault. On November 14, 1996, the State filed a motion to supplement the record with affidavits, one of which stated that Court Exhibit 1 had been located and forwarded to this Court. Because other documents produced by the State and by complainant's father for in camera inspection had not been located, we ordered the trial court to conduct an evidentiary hearing to determine whether any portions of the record were missing and whether they were missing without appellant's fault. After an evidentiary hearing, the trial court made the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. After reviewing those portions of the statement of facts and transcript submitted to this Court as Dx 1–8, the Court finds that those portions of the record do not support Appellant's contention that some "exhibits" have been lost or destroyed. Specifically, though there are several references in the statement of facts and transcript to (1) the documents subpoenaed from Abraham Quintanilla, (2) the mental health records of Rosario Garza, (3) the records of attorney Albert Huerta, and (4) a "manager for life" contract, Appellant never made these documents part of the trial record for appellate review.

2. No "manager for life" contract ever existed.

3. Other than the documents subpoenaed from Abraham Quintanilla and Court Exhibit No. 1, appellant made no inquiry as to any other missing documents prior to the hearing.

4. The clerks of the 214th and 228th District Courts never had custody or possession of whatever it is that appellant contends is lost or destroyed. Appellant never requested that they make it a part of the record.

5. The official court reporters of the 214th and 228th District Courts never had custody or possession of whatever it is that Appellant contends is lost or destroyed. Other than Court Exhibit No. 1, these items were never marked, offered or admitted into evidence.

6. Court Exhibit No. 1 has not been lost or destroyed.

7. The documents submitted to the Court by Sergeant Joel Castandeda for *in camera* inspection, not all of which are in Court Exhibit No. 1, were given to Appellant's counsel.

8. All exhibits which were properly marked, offered and admitted into the record are accounted for and are in the custody of the Fourteenth Court of Appeals.

9. Whatever it is that Appellant contends is lost or destroyed, other than Court Exhibit No. 1, was never properly marked for identification or admitted into evidence.

10. Appellant never made a formal or informal bill of exception regarding whatever it is that Appellant contends is lost or destroyed.

11. The great bulk of material that remained in the courtroom and the surrounding area after the trial was removed to the office of Appellant' counsel by a delivery service.

12. Exact copies of the documents subpoenaed from Abraham Quintanilla have been substituted in their entirety for the purposes of this hearing only.

13. The Court instructed a clerk and/or other court personnel to make the documents subpoenaed from Abraham Quintanilla a part of the record. This specific instruction is not part of the record. Both clerks and the official court reporter of the 228th District Court specifically recall not having been instructed to do this. The Court learned at this hearing that it is the custom and practice in Harris County to require a written order to facilitate the inclusion of *in camera* documents in the Court's file.

14. Appellant made a timely request for a complete record.

### CONCLUSION OF LAW

1. Because Tex.R.App. P. 50(d) places the burden squarely on Appellant, rather than this Court, to see that a sufficient record is presented to show error requiring reversal, Appellant is not entitled to a new trial pursuant to Tex.R.App. P. 50(e) because whatever it is that Appellant contends is lost or destroyed were not "admitted exhibits." [citation omitted]

2. There exists a paucity of appellate and/or statutory guidelines for the proper handling of *in camera* records.

Appellant does not specifically dispute the trial court's findings of fact and conclusions of law on appeal. Instead, she makes a general assertion that some of the original papers and exhibits on file or admitted at trial were lost or destroyed without her fault. After reviewing the record, we perceive nothing that shows the trial court abused its discretion in making its findings of fact or drawing incorrect conclusions of law from the findings of fact. *See Wynne v. State,* 831 S.W.2d 513, 523 (Tex.App.—Amarillo 1992, pet. ref'd) (reviewing basic argument and unargued points). None of the documents that form the basis of appellant's complaint were admitted as evidence or placed in the trial court's file; consequently, none of the documents were ever part of the record. Therefore, rule 50(e) affords appellant no relief. Accordingly, we overrule appellant's seventeenth point of error.

## VI. Comment on Failure to Testify

In point of error fourteen, appellant contends the trial court committed reversible error in overruling her objections and denying her motion for mistrial based on the prosecutor's comments on her failure to testify. "The purpose of closing argument is to facilitate the jury in properly analyzing the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence alone, and not on any fact not admitted in evidence." *Campbell v. State,* 610 S.W.2d 754, 756 (Tex.Crim.App. 1980). To be proper, jury argument must encompass one or more of the following: (1) summation of the evidence presented at trial; (2) reasonable deduction from that evidence; (3) answer to opposing counsel's argument; or (4) a plea for law enforcement. *See Cockrell v. State,* 933 S.W.2d 73, 97 (Tex.Crim. App.1996), *cert. denied,* — U.S. —, 117 S.Ct. 1442, 137 L.Ed.2d 548 (1997).

A comment on the defendant's failure to testify violates the privilege against self-incrimination contained in the Fifth Amendment to the United States, Article I, Section 10 of the Texas Constitution, and Article 38.08 of the Texas Code of Criminal Procedure. *See* U.S. CONST. art. V; TEX. CONST. art. I, § 10; TEX.CODE CRIM. PROC. ANN. art. 38.08 (Vernon 1979). To determine whether a prosecutor's remark constituted an impermissible reference to an accused's failure to testify, we consider whether the offending language, when viewed from the jury's standpoint, was manifestly intended or of such a character that the jury would necessarily and naturally take it as a comment on the accused's failure to testify. *See Montoya v. State,* 744 S.W.2d 15, 35 (Tex.Crim. App.1987), *overruled on other grounds by Cockrell,* 933 S.W.2d at 89. It is not sufficient that the offending language might be construed as an implied or indirect allusion to the defendant's failure to testify; the implication that the offending language made reference to the failure to testify must be a necessary one. *See Swallow v. State,* 829 S.W.2d 223, 225 (Tex.Crim.App.1992). On the other hand, "[l]anguage that can reasonably be construed to refer to a failure to present evidence other than from the defen-

dant's own testimony does not amount to comment on failure to testify." *Id.* In applying this standard, we consider the facts and circumstances of each case to determine whether the language used was an impermissible comment. *See Montoya,* 744 S.W.2d at 35.

Appellant complains of the following two arguments, in which the prosecutor commented on appellant's failure to give an adequate explanation for her actions:

> MR. SKURKA: Mr. Quintanilla suspected her [appellant] of a lot of things and confronted her with it in front of Selena and in front of Suzette. What's happened? What's happened? She was never able to give a satisfactory explanation, she could never explain why these people that sent in their money hadn't gotten anything.

> \* \* \* \* \*

> MR. SKURKA: And, again, you've got a registered nurse here, folks, somebody that knows about reporting this kind of stuff and documenting this evidence and everything. How come she doesn't report it down in Mexico? How come she doesn't do that? How come she drives her sister back to San Antonio and then comes back to Corpus and never reports it?

The trial court overruled appellant's objection to each argument.

Neither argument, in this case, was a comment on appellant's failure to testify at trial. The first argument was a summation of the evidence. Quintanilla, Arriaga, and Perez testified that appellant was unable to give an adequate explanation for fan club discrepancies and other document discrepancies when confronted with their suspicions.

■ The second argument was a rhetorical question based upon a reasonable deduction from the evidence. "Rhetorical questions are generally within the scope of jury argument so long as they are based upon a

reasonable deduction from the evidence." *Wolfe v. State,* 917 S.W.2d 270, 280 (Tex. Crim.App.1996). A rhetorical question, however, may constitute an impermissible comment on the failure to testify if it is accompanied by an statement pointing to the lack of an explanation. *See id.* In this case, the prosecutor's argument was based on a reasonable deduction from the evidence. Patricia Norma Biggs, the director of the emergency room at Doctor's Regional Medical Center in Corpus Christi, testified that complainant brought appellant to the hospital because appellant said she had been raped by two men the day before in Mexico. The hospital was unable to assist appellant in reporting the rape because it occurred in Mexico. As a courtesy, Biggs arranged for evidence to be collected at the University Medical Center in San Antonio because appellant was from San Antonio. From this testimony, the prosecutor questioned why appellant, who was a registered nurse, waited to report the rape. The prosecutor did not say, however, that an explanation had not been given. In this instance, the prosecutor properly used a rhetorical question to persuade the jury that the rape and appellant's theory of the case were untrue.[12]

■ Appellant also complains of the following argument:

> MR. VALDEZ: You know why he said things like that? There's a reason for it. To take your mind off the real issue in this case, take you mind off the real person who's at fault, right there. The one who stands up defiantly every time they point to her, she stands up defiantly. She doesn't say anything but she looks at you and she's very defiant to everybody who points at her, that's the one who's responsible and she's guilty.

Appellant, however, did not object to the argument. A defendant's failure to object to a jury argument forfeits her right to complain about the argument on appeal. *See* TEX.R.APP. P. 33.1(a); *Valencia v. State,* 946

---

12. In his opening statement, appellant's trial attorney argued that Quintanilla disapproved of complainant's relationship with appellant and that appellant feared Quintanilla. Complainant and appellant, he said, were as close as sisters. He further argued evidence that complainant

took appellant to the hospital the day before complainant died was proof that complainant and appellant were not having a confrontation. The record reflects complainant took appellant to the hospital because appellant said she had been raped in Mexico.

S.W.2d 81, 82–83 (Tex.Crim.App.1997) (stating pertinent question in reviewing jury argument is whether defendant objected and pursued the objection to an adverse ruling); *Cockrell*, 933 S.W.2d at 89 (holding rule of appellate procedure undermines exception that appellant may object first time on appeal about an erroneous jury argument not cured by an instruction to disregard); *Campos v. State*, 946 S.W.2d 414, 413–18 (Tex. App.—Houston [14th Dist.] 1997, no pet.)(discussing rejection by court of criminal appeals of exception to general rule regarding prejudicial jury argument). Because appellant did not object, she waived any possible impropriety of this argument.

■ Finally, appellant argues the trial court erred in denying her request for a mistrial after sustaining her objection and instructing the jury to disregard the following argument:

MR. VALDEZ: And the only thing that he has going is that he says the tapes prove it was an accident, they don't. He says Robert Garza proves it was an accident, it doesn't; it's not any evidence of accident. What kind of evidence is there in this case? What kind of evidence is there that this was an accident? When you think about it there isn't any. There is no evidence. The only evidence so far are the tapes, and on the tapes the defendant says she didn't intend to do it, that the gun went off accidentally. That's the evidence.

Now, if that proved that a shooting was an accident, we'd never have any murder prosecutions. Never. If anybody who shot somebody else just had to come in and say it was an accident and that proved it, we couldn't prosecute anybody. That's the only evidence they have besides the Ranger who says he heard her say that the gun went off. Once again—.

The record reflects that during closing arguments, one of appellant's trial attorneys argued the State could not prove its case against appellant because the testimony of Robert Garza and the hostage negotiation tapes revealed the shooting was an accident. Appellant's trial attorney argued the State had attempted to minimize the importance of the tapes and Garza's testimony at trial because they were devastating to its case. He further argued Garza's testimony and the tapes were credible evidence because the State could not present evidence without vouching for its credibility. The trial court overruled the State's objection that appellant's trial attorney misstated the law. Appellant's trial attorney then argued Garza's testimony and the tapes were credible, as follows:

They embrace it, and so they brought you by embracing it evidence that has to create a reasonable doubt. Because credible evidence on that tape time and time again consistently, unrehearsed, in an emotional state, not planned, not trying to excuse, says: This was an accident, it was unintentional, I didn't intend to hurt her, I didn't intend to shoot her. They brought you and embraced credible evidence, which cannot now be discounted by you. They may not like it, but they chose, because of that tactic, they chose to put themselves in a position where each of you can walk back there and say, "Yes. There is a reasonable doubt. I don't even really have to go any further than that because there is a reasonable doubt." And you say not guilty when you do that and you come right back.

After reviewing the record, we find the prosecutor's comments, in this instance, were not outside the bounds of proper jury argument. Instead, the prosecutor's comments were an answer to the argument of opposing counsel and a comment on appellant's failure to provide additional evidence to support her theory that the shooting was accidental.

■ Even if the prosecutor's argument could be construed as a comment on appellant's failure to testify, the trial court's instruction to disregard the statement cured any error. *See Dinkins v. State*, 894 S.W.2d at 357; *see also* TEX.R.APP. P. 44.2(a). Because the trial court did not err in overruling appellant's objections to comments made by the prosecutor during closing arguments and did not err in denying appellant's motion for mistrial, we overrule appellant's fourteenth point of error.

## VII. Prejudicial Opinion Testimony

In her thirteenth point of error, appellant maintains the trial court abused its discretion in admitting irrelevant and prejudicial opinion evidence during the punishment phase of trial. Appellant specifically objects to the testimony of Dr. Fastino Gomez, a San Antonio dermatologist. Outside the jury's presence, Dr. Gomez testified that he employed appellant twelve years ago as a medical receptionist/bookkeeper but he terminated appellant's employment when he discovered she misappropriated $9,200 from his business. Over objection, Dr. Gomez testified before the jury that in his opinion, appellant was not a law-abiding citizen. On cross-examination, he admitted he had not seen appellant in ten years.

Appellant argues Dr. Gomez's testimony should be inadmissible because his opinion is based on an experience that occurred twelve years ago. Appellant acknowledges that former rules 404 and 405 of the rules of criminal evidence regarding character evidence are silent as to the remoteness of the underlying events giving rise to opinion testimony. *See* Tex.R.Crim. Evid. 404, 49 Tex. B.J. 223 (1986) (current version at Tex.R. Evid. 404); Tex.R.Crim. Evid. 405, 53 Tex. B.J. 919 (1990) (current version at Tex.R. Evid. 405). Nevertheless, she contends the ten-year rule governing impeachment evidence under former rule 609(b) should apply to character evidence admitted for punishment purposes because an opinion based on a remote transgression is a poor indicator of present character. *See* Tex.R.Crim. Evid. 609(b), 49 Tex. B.J. 227 (1986) (current version at Tex.R. Evid. 609(b)).

A plain reading of section 3(a) of article 37.07 does not invoke the restriction that appellant invites us to apply. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon Supp.1998). Article 37.07 simply does "not address the effects, if any, of a statute of limitations for previous criminal offenses or the staleness of bad acts." *Tow v. State*, 953 S.W.2d 546, 547–48 (Tex.App.—Fort Worth 1997, no pet.). Moreover, appellant cites no authority, nor have we found any, to support a holding restricting the admissibility of opinion evidence during the punishment phase to opinion based on offenses or acts less than ten years old. To the contrary, the plain language of the statute supports a broad interpretation in favor of the admissibility of all relevant evidence, unless the probative value of the evidence is substantially outweighed by its prejudicial effect. *Taylor v. State*, 970 S.W.2d 98, 102–03 (Tex.App.—Fort Worth 1998, pet. ref'd); *Tow*, 953 S.W.2d at 547–48. Article 37.07 expressly provides during the punishment phase, the State or the defendant may offer evidence *as to any matter the trial court deems relevant to sentencing*, including, but not limited to, the defendant's general reputation, her character, and an opinion regarding her character. *See* Tex.Code Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon Supp.1997) (emphasis added).

Moreover, section 3(a) of article 37.07 empowers the trial court with authority on the threshold issue of admissibility of relevant evidence during the punishment phase of a trial. An appellate court reviews such evidence under an abuse of discretion standard. *See Mitchell v. State*, 931 S.W.2d 950, 953 (Tex.Crim.App.1996). Therefore, as long as the trial court's ruling was at least within the zone of reasonable disagreement, we will not intercede. *See Montgomery v. State*, 810 S.W.2d at 391 (recognizing that reasonable men may disagree whether in common experience a particular inference is available). A trial court abuses its discretion if by no reasonable perception of common experience it admits evidence that is not relevant by any reasonable interpretation or if what appears to be common experience is really no more than the operation of a common prejudice, not borne out in reason. *Id.*

Article IV of the former Texas Rules of Criminal Evidence addresses relevancy and its limits. Former rule 404(c) of Article IV provides that the prosecution or the accused may offer evidence of the accused's prior criminal record or other character evidence during the penalty phase of trial. *See* Tex. R.Crim. Evid. 404(c), 49 Tex. B.J. 223 (1986). Former rule 405(a) permits either party to provide proof of character by reputation testimony or opinion testimony conditioned only on the witness's familiarity with the reputa-

tion of the accused or with the underlying facts or information upon which the opinion is based, prior to the date of the offense. *See* Tex.R.Crim. Evid. 405(a), 53 Tex. B.J. 919 (1990) (current version at 405(a)). In either case, the trial court may permit inquiry into relevant specific instances of conduct on cross-examination. *Id.*

In this case, the trial court held a hearing outside the jury's presence to consider the relevancy and admissibility of Dr. Gomez's testimony. After hearing Gomez's testimony of the facts underlying his opinion and considering the argument of counsel, the trial court permitted Gomez to tell the jury that in his opinion appellant was not a law-abiding citizen. We find the trial court's ruling was at least within the "zone of reasonable disagreement" under the applicable rules of evidence; thus we will not intercede. *See Montgomery*, 810 S.W.2d at 391. Appellant's thirteenth point of error is overruled.

### VIII. Instruction on Sudden Passion with Adequate Cause

■ In her fifteenth and sixteenth points of error, appellant claims the trial court erred in denying her request for an instruction and a special issue regarding sudden passion as permitted under section 19.02(d) of the Texas Penal Code. Section 19.02(d) provides in relevant part as follows:

> At the punishment stage of a trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree.

Tex. Penal Code Ann. § 19.02(d) (Vernon 1994). "The existence of sudden passion is simply a mitigating factor relevant to punishment, and the burden of proving sudden passion by a preponderance of the evidence during the punishment phase rests on the defendant." *Rainey v. State*, 949 S.W.2d 537, 541 (Tex.App.—Austin 1997, pet. ref'd), *cert. denied*, — U.S. —, 119 S.Ct. 186, — L.Ed.2d — (1998). The current definitions of sudden passion and adequate cause are identical to those set forth in the former

voluntary manslaughter statute. *Compare* Tex. Penal Code Ann. § 19.02(a) *with* Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 913 (former Tex. Penal Code Ann. § 19.04(b), (c)) *repealed by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3614. Therefore, we rely on prior decisions under the voluntary manslaughter law for guidance. *See Roberts v. State*, 590 S.W.2d 498, 501 (Tex.Crim.App. [Panel Op.] 1979).

■ An accused is entitled to an instruction on every defensive issue raised by the evidence whether the evidence is strong, weak, contradicted, unimpeached, or unbelievable. *See Muniz v. State*, 851 S.W.2d 238, 254 (Tex.Crim.App.1993). Consequently, if the record reflects any evidence that appellant acted under the immediate influence of sudden passion arising from an adequate cause, the trial court should submit an instruction on this mitigating circumstance. *See Perez v. State*, 940 S.W.2d 820, 822 (Tex. App.—Waco 1997, no pet.).

Appellant maintains her written statement raises the issue of whether she caused complainant's death under the immediate influence of sudden passion arising from adequate cause. Appellant contends she became enraged after complainant told her that complainant's father accused her of embezzlement and sexual deviance and subsequently argued with complainant, which immediately escalated into a killing.

Appellant attested in the statement to the following, in pertinent part:

> As she [complainant] was driving me back to the motel in her truck, she told me that her father had told her that the papers I had brought from Monterrey were wrong and that her father had said that I was a lesbian. I got mad and I told her that I did not want to work for her anymore. We got to the motel and we both went inside the room and we both argued because I wanted to quit working for her. I gave her everything that I had, the cellular phone and the bank files as we argued. She started dumping all the files on the bed from the briefcase or handbag that I had. I took the gun from my purse which

I had bought about two weeks ago in San Antonio for $250.00.... I took the gun from my purse and Selena started walking toward the door which was opened. I pulled the hammer back and I shot at her as she was walking towards the door which was open.

"Sudden passion" means passion directly caused by and arising out of provocation by the victim or another acting with the victim, which arises at the time of the offense and is not solely the result of former provocation. TEX. PENAL CODE ANN. § 19.02(a)(2) (Vernon 1994). In other words, sudden passion is "an excited and agitated mind at the time of the killing caused by an act of the deceased." *Hobson v. State,* 644 S.W.2d 473, 478 (Tex. Crim.App.1983); *Powers v. State,* 757 S.W.2d 88, 90 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). "Adequate cause" is cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection. TEX. PENAL CODE ANN. § 19.02(a)(1).

 In this case, appellant's written statement does not raise the issue of sudden passion arising from adequate cause. While the statement shows that complainant provoked appellant's anger by telling her about Quintanilla's accusations and that they argued over her continued employment, it does not reflect evidence of the extreme emotional and psychological state defining sudden passion or adequate cause. Shooting an employer and friend in the back as she walks away from an argument is not an objectively common response in an ordinary reasonable person. "The murderous acts of one not of ordinary temper or whose response to the alleged cause is not objectively common in the ordinary, reasonable person does not support a voluntary manslaughter issue." *Willis v. State,* 936 S.W.2d 302, 308 (Tex. App.—Tyler 1996, pet. ref'd); *Lopez v. State,* 716 S.W.2d 127, 129 (Tex.App.—El Paso 1986, pet. ref'd). "In other words, voluntary manslaughter is not available to one whose actual emotional responses are aberrational in this society." *Willis,* 936 S.W.2d at 308.

Because appellant's written statement did not raise the issue of sudden passion from adequate cause, the trial court did not err in overruling her objection to the jury charge and refusing her requested instruction on the issue. Accordingly, we overrule appellant's fifteenth and sixteenth points of error.

Finding no reversible error, we affirm the judgment of the court below.