NO. 07-03-0476-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



MARCH 26, 2004


______________________________



SURGERY CENTERS OF AMERICA II, 



 Appellant


v.



HANNA CANIZARO, M.D., MILES R. DAY, M.D.; SAMMY A. DEEB, M.D.; WERNER
DE RIESE, M.D.; STEPHEN GATES, M.D.; JOHN GRISWOLD, M.D.; ALAN D. KAYE,
M.D.; LELAND LOU, M.D.; BERNARD T. MITTMEYER, M.D.; BRIAN J. NORKIEWICZ,
M.D.; GABOR B. RACZ, M.D.; and P. PRITHVI RAJ, M.D., 


 Appellees

_________________________________



FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2002-578,731; HON. ANDY KUPPER, PRESIDING


_______________________________


 

Dismissal


_______________________________



Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

 A "Stipulation of Dismissal" has been filed with this court in the above-referenced
matter and signed by the attorneys representing Surgery Centers of America II (SCOA)
and the appellees. In the document, SCOA and the appellees "stipulate that SCOA[]'s
appeal of the Trial Court's Order entered on July 15, 2003 shall be dismissed with
prejudice." They further state in the stipulation that the "costs of this appeal shall be taxed
to [SCOA]."

 Because no decision of this court has been delivered to date, we dismiss SCOA's
appeal. No motion for rehearing will be entertained and our mandate will issue forthwith. 
Tex. R. App. P. 42.1. 


 Brian Quinn

 Justice 





























 


FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JULY 7, 2009

______________________________


DAVEY ENRIQUEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 223RD DISTRICT COURT OF GRAY COUNTY;

NO. 7401, 7402, 7403 & 7404; HONORABLE LEE WATERS, JUDGE

__________________________________


MEMORANDUM OPINION


Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.


          Appellant, Davey Enriquez, appeals two convictions for aggravated robbery and two
convictions for aggravated assault. Appellant plead not guilty to all charges, but was found
guilty by a jury, which then assessed four concurrent 99 year sentences. Appellant
originally raised five issues; however, prior to submission, he waived issues one and two. 
By issue three, Appellant contends the evidence was factually insufficient and by issues
four and five, he contends the trial court erred by admitting certain evidence. We affirm.
Factual Background
          A somewhat detailed recitation of the factual background is necessary to our
discussion of Appellant’s factual sufficiency issue. On Sunday, May 21, 2006, at
approximately 9:00 a.m., Layne Conner and his wife, Mae Conner, were the victims of a
home invasion robbery. Two masked men, one armed with a shotgun, and the other
armed with a handgun, burst through the backdoor of their residence and confronted the
Conners. The robbers’ accents indicated they were Hispanic. The shotgun bearing robber
was described as a “big heavyset guy” with distinctive dark eyes. He was the taller of the
two gunmen. The handgun bearing robber was described as being about five feet seven-to-eight inches tall and weighing 175 to 180 pounds. During the robbery, Mr. and Mrs.
Conner were made to lie on the floor. The shotgun bearing robber (whom Mr. Conner
identified as “this defendant here”) held his gun to the back of Mrs. Conner’s head and the
handgun bearing robber held his gun to the back of Mr. Conner’s head. At one point, as
a means of intimidation, the handgun bearing robber discharged his firearm, however, no
one was injured. 
          The robbers immediately focused on a filing cabinet containing three separate bags
of money containing approximately $35,000 in cash. After Mr. Conner handed over two
of the three bags of money, the robbers left, grabbing Mrs. Conner’s purse on the way out. 
Mr. Conner observed the two robbers flee the scene of the crime in a newer model gray
Jeep Cherokee with tinted windows; however, he was unable to read the vehicle tag
number. The robbers left no physical evidence or fingerprints which tied Appellant to the
scene of the crime. 
          While the robbery was taking place, Jesse Conner, the Conners’ nine year old
grandson, hid under his grandparents’ bed. From there he observed one of the robbers
wearing a shoe, “kind of like a tennis shoe,” bearing an “S” on the side of the shoe.
           After the robbers left, but before calling 911, Mrs. Conner called her daughter, Mayla
Arreola. She suspected the robbers had gained information from Mayla pertaining to their
residence and the stash of money because, several days earlier, while the Conners were
out of town, Mr. Conner had contacted Mayla and asked her to count the cash which was
contained in the bags located in the filing cabinet. 
           Initially, Mayla denied telling anyone about the money in the Conner home;
however, she later admitted telling a friend, Tiffeni Martinez, the substance of her
conversation with her father, including the existence and location of the money. Phone
records introduced by the State showed that in the days just prior to the robbery, there
were numerous cell phone conversations between Tiffeni’s husband, Andrew Martinez, and
his cousin, Carlos Cordova. 
          A police investigation, initiated by a Crime Stoppers tip, revealed that Appellant and
Cordova were close friends and that the two were often seen in the company of Appellant’s
cousin, Adam Aguilar. At trial, Danielle Holmes testified that on May 20, 2006, the evening
prior to the robbery, Appellant, Cordova, and an unidentified third person, came to her
residence to visit with Woody (last name unknown, but later identified as Dustin Lee Allen). 
The three men had arrived in a gray, newer model Jeep Cherokee. After a conversation
with Cordova, Woody told Danielle that he was going to Pampa to get some money and
he would be back in a couple of hours; however, Holmes prevented Woody from leaving
with the others. The next morning, “before daybreak,” Cordova came back and told Woody
that “it just didn’t go as planned.” A few days later, Holmes learned that Appellant,
Cordova, and Aguilar were “irritated and agitated” because the police had questioned them
about what “happened in Pampa on May the 21st.” Holmes also testified that, after the 21st,
Carlos and Appellant were wearing “nice,” “flashy” clothes.
          Another witness, Priscilla Badillo, the mother of Adam Aguillar’s daughter, testified
that she overheard Appellant “talking about him and Carlos and something about Carlos’s
cousin and Pampa, money, guns, kids, stuff like that.” Based on this information and its
similarity to news reports about the Pampa home invasion, Priscilla made the Crime
Stoppers tip. Lorena Manriquez, the mother of Appellant’s children, testified that Appellant
owned a pair of Sketcher boots that had an “S” on the side of it. During the investigation,
none of the clothing the robbers wore was recovered and none of the money taken was
recovered. No comparable fingerprints or shoeprints were found and no impressions of
the tire prints from the place where the Jeep Cherokee departed were taken.
          After the State rested, the defense offered testimony to the effect that Appellant
attended a Quinceañera


 in Amarillo for his cousin on the afternoon and evening of May
20, 2006. Testimony from Gilbert Maldonado, Appellant’s cousin and brother of the
Quinceañera honoree, indicated that Appellant stayed at the party “probably ‘til four o’clock
[a.m.],” the morning of May 21st. Manriquez testified that she and Appellant left the party
between 3:00 to 4:00 a.m. and that she was driving since he was drunk. She further
testified that Appellant stayed in bed that morning until approximately 10:00 to 10:30.
Discussion
Issue Three - Factual Sufficiency
          By his third issue, Appellant contends the evidence is factually insufficient to sustain
the verdict against him. More specifically, Appellant contends that, not only is the State’s
evidence tending to connect him with the offenses extremely weak, his evidence tending
to establish an alibi is such that, when combined, they render the jury’s verdict manifestly
unjust.

Standard of Review-Factual Sufficiency Review
          When conducting a factual sufficiency review, we begin with the assumption that the
evidence is legally sufficient under Jackson v. Virginia. See Laster v. State, 275 S.W.3d
512, 518 (Tex.Crim.App. 2009). Evidence that is legally sufficient, however, can be
deemed factually insufficient in either of two ways: (1) the evidence supporting the
conviction is so weak that the jury’s verdict seems “ clearly wrong and manifestly unjust,”
“shocks the conscience,” or “clearly demonstrates bias,” or (2) considering contrary
evidence, the factfinder’s verdict is “against the great weight and preponderance of the
evidence.” Id.; See also Grotti v. State, 273 S.W.3d 273, 283 (Tex.Crim.App. 2008);
Watson v. State, 204 S.W.3d 404, 426 (Tex.Crim.App. 2006); Clewis v. State, 922 S.W.2d
126, 135 (Tex.Crim.App. 1996). In a factual sufficiency review, the reviewing court must
consider the probative weight of all of the evidence in a neutral light (i.e., without the prism
of “in the light most favorable to the prosecution”). Steadman v. State, 280 S.W.3d 242,
246 (Tex.Crim.App. 2009); Laster, 275 S.W.3d at 518.
          In reviewing a jury’s decision we are mindful that the jury is the sole judge of the
credibility of the witnesses and the weight to be given testimony, Lancon v. State, 253
S.W.3d 699, 705 (Tex.Crim.App. 2008). A jury is entitled to disbelieve some or all of a
witness’s testimony, even when that testimony is uncontradicted. Hernandez v. State, 161
S.W.3d 491, 501 (Tex.Crim.App. 2005). Therefore, appellate courts should afford almost
total deference to a jury’s decision when that decision is based upon an evaluation of
credibility, Lancon, 253 S.W.3d at 705; because, being present to hear the testimony, as
opposed to relying upon a cold record, the jury is in the better position to judge the
credibility of the witness. Marshall v. State, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006). 
          In conducting a factual sufficiency review, an appellate court must exercise its
factual sufficiency jurisdiction with great deference to the jury’s findings and we cannot
conclude that the conviction is factually insufficient simply because we might otherwise
disagree with the jury’s verdict. Watson, 204 S.W.3d at 416-17; Cain v. State, 958 S.W.2d
404, 407 (Tex.Crim.App. 1997). Basically, the only question to answer in a factual
sufficiency review is: “Considering all of the evidence in a neutral light, was a jury rationally
justified in finding guilt beyond a reasonable doubt?” See Grotti, 273 S.W.3d at 283 (citing
Watson, 204 S.W.3d at 415). 
          As directed by the Court of Criminal Appeals, in conducting our analysis we are
guided by at least three “basic ground rules”: (1) we must consider all of the evidence in
a neutral light, as opposed to in a light most favorable to the verdict;


 (2) we may only find
the evidence factually insufficient when necessary to “prevent manifest injustice”;


 and (3)
in reversing a conviction we must explain why the evidence presented is too weak to
support the verdict or why the conflicting evidence greatly weighs against the verdict.


 
Laster, 275 S.W.3d at 518; Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).
Analysis
          Our analysis of Appellant’s factual sufficiency issue requires that we address both
ways in which evidence can be determined to be factually sufficient. On the one hand,
Appellant contends the evidence supporting the verdict is, in and of itself, too weak to
support the jury’s verdict; whereas, on the other hand, Appellant also argues there was
conflicting evidence that renders the jury’s verdict factually insufficient. We will address
each argument separately.
Evidence Supporting Verdict Too Weak
          Appellant contends the evidence was factually insufficient because the evidence
supporting the verdict was just too weak. In support of this argument, he contends the
verdict is “clearly wrong or manifestly unjust or against the great weight and preponderance
of the evidence” because there is no physical evidence tending to connect Appellant to the
crime. Circumstantial evidence is as probative as direct evidence in establishing the guilt
of the accused. Guevara v. State, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004). While each
fact need not point directly and independently to the guilt of the accused, the cumulative
force of circumstantial evidence alone may be sufficient to support a conviction. Id. 
Although the Conners were unable to identify their robbers, Appellant never admitted his
guilt, and no physical evidence was ever obtained directly connecting him to this offense,
we find that the cumulative force of the above described circumstantial evidence is
sufficient to make that connection. Conflicting Evidence
          Appellant also contends that other evidence presented tended to cast doubt on the
jury’s verdict. Specifically, having conceded that the evidence tending to connect Carlos
Cordova to the offense was much greater, Appellant postulates the idea that he could not
have been the other robber because he and Cordova were not brothers and there was
testimony that when one of the robbers asked the other robber where the Conners’
grandchild went, the other robber responded, “I don’t know, brother, I don’t know.” He also
suggests that he could not have been at the residence of Danielle Holmes on May 20th,
because he was at the Quinceañera, and he could not have been at the Conners’
residence on May 21st, at 9:00 a.m., because he was at home in bed.
          “Uncontradicted testimony” is a concept totally different from “undisputed facts.” 
Evans, 202 S.W.3d at 164. Merely because testimony is uncontradicted does not mean
that its opponent, in this case the State, has assumed or admitted the truth of that fact, or
that it concerns a physical fact that cannot be denied. A jury is entitled to determine which
uncontradicted facts it chooses to believe and what inferences it chooses to draw from
those facts, but it is not required to do either. Id. at 165.
          Use of the term “brother” by one robber does not lead to the undeniable conclusion
that the two perpetrators were “brothers” by blood or marriage. Furthermore, Appellant’s
presence at the Quinceañera does not exclusively eliminate the possibility that he was also
at Danielle’s residence. Finally, as to his alibi defense, the jury was not required to accept
that testimony. Considering the conflicting evidence, and giving appropriate deference to
the jury’s verdict and its right to believe or disbelieve that evidence and the inferences to
be drawn therefrom, we cannot say that the jury’s verdict is “against the great weight and
preponderance of the evidence.” 
          Considering all of the evidence in a neutral light, we conclude the jury was rationally
justified in finding guilt beyond a reasonable doubt. Issue three is overruled.
Issue Four - Hearsay
          By his fourth issue, Appellant contends that three statements introduced into
evidence during Danielle’s testimony were hearsay: (1) that, after talking to Carlos Cordova
prior to the robbery, Woody told her “I’m just going to get some money,” (2) that when
Cordova later returned, Woody asked him “Did it go through?,” and (3) that in response to
that question, Cordova replied, “It just didn’t go as planned.” Appellant further contends
that these statements are not subject to the “in furtherance of a conspiracy” or the
“statement against interest” hearsay exceptions, and that their erroneous admission
substantially influenced the verdict. In response, the State contends the first statement
was a statement concerning future conduct, and thus not hearsay, and the second and
third statements were statements against interest. The State also contends Appellant
waived any objection to the third statement by failing to make a contemporaneous
objection. Analysis
          Appellate courts review decisions regarding the admissibility of evidence under an
abuse of discretion standard. See Montgomery v. State, 810 S.W.2d 372, 391
(Tex.Crim.App. 1991). Because the trial court is in the best position to decide questions
fo admissibility, appellate courts should uphold the trial court’s admissibility decision when
that decision is within the zone of reasonable disagreement. Id. An appellate court may
not reverse a trial court’s decision regarding the admissibility of evidence solely because
the appellate court disagrees with that decision. Id.; Cameron v. State, 241 S.W.3d 15,
19 (Tex.Crim.App. 2007). 
          “Hearsay” is an out-of-court statement “offered in evidence to prove the truth of the
matter asserted.” Tex. R. Evid. 801(d). A statement is not hearsay, by definition, if it is
offered against a party and is a statement by a co-conspirator of that party, made during
and in furtherance of the conspiracy. Tex. R. Evid. 801(e)(2)(E). Furthermore, a statement
which, at the time of its making, so far tended to subject the declarant to criminal
responsibility that a reasonable person in declarant’s position would not have made the
statement unless believing it to be true, is an exception to the general hearsay rule. Tex.
R. Evid. 803(23).
          The relevance of Woody’s statement that he was going to get some money was
that, if true, it tended to prove that Woody had joined a conspiracy, consisting of Cordova,
Appellant, and an unidentified third person, to obtain some money, in Pampa, by some
method, on the night of May 20, 2006; thereby inferring that Appellant also intended the
same thing. As such, it was the truth of his future intent that had any relevance. 
Statements concerning a declarant’s then existing state of mind, including his future intent
or plan, is an exception to the hearsay rule. See Texas Rules of Evidence 803(3); Saldivar
v. State, 980 S.W.2d 475 (Tex.App.–Houston [14th Dist.] 1998, pet. ref’d).
          Concerning Woody’s question, “Did the deal go through?,” the challenged statement
is not hearsay because it was not offered in evidence to prove the truth of the matter
asserted. A purely contextual out-of-court statement that is nothing more than a question
is not hearsay. Fischer v. State, 207 S.W.3d 846, 850 n.5 (Tex.App.–Houston [14th Dist.]
2006, aff’d on other grounds 252 S.W.3d 375 (Tex.Crim.App. 2008). 
          Finally, Cordova’s response, “It just didn’t go as planned,” inferentially tends to show
that Cordova committed or attempted to commit the offense that was the subject of the
previously discussed conspiracy, i.e., to obtain some money, in Pampa, by some method. 
When combined with other evidence, the probative force of which was to show that an
aggravated robbery was committed, in Pampa, by Cordova, it can be said that, at the time
of its making, the statement so far tended to subject the declarant (Cordova) to criminal
responsibility that a reasonable person in declarant’s position would not have made the
statement unless believing it to be true. Accordingly, the trial court did not err in admitting
the three challenged statements.
Issue Five - Witness’s “Sense” Testimony
          By his fifth and final issue, Appellant contends the trial court erred by allowing a
witness to testify as to the “sense” she had that a weapon was in the vehicle occupied by
Appellant on the evening prior to the robbery. Appellant further contends the error
substantially influenced the jury’s verdict, calling for a reversal of his conviction. 
Analysis
          Danielle Holmes testified that she was present the evening before the robbery when
Appellant, Carlos Cordova, and an unidentified third person came to her house and visited
with Woody about a “deal” in Pampa. When asked if she saw anyone with a gun, Holmes
replied:
You can hear it but, you know, it could have been some change, it could
have been whatever but you can, you know, – I don’t know how to explain it.
 
When then asked if she had a “sense” that there may have been weapons present, over
Appellant’s objection, she replied:
What I’m trying to say is you couldn’t tell what it was but you can see, you
know, it was something but you don’t know what it was, so I can’t really say
if it was a gun or a knife or whatever, but you can tell it was something – 
 
          Here, Holmes was permitted to give her personal opinion (or “sense”) as to whether
there was a weapon present when Appellant, Cordova, and a third party visited with Woody
concerning a “deal” that was to take place in Pampa. Pursuant to Texas Rule of Evidence
701, a lay witness may testify in the form of an opinion or inference if that opinion is (1)
rationally based on the perception of the witness and (2) it is helpful to a clear
understanding of the witness’s testimony or the determination of a fact issue. Scott v.
State, 222 S.W.3d 820, 827 (Tex.App.–Houston [14th Dist.] 2007, no pet.). The challenged
testimony was nothing more than Holmes’s opinion as to whether a weapon was present,
rationally based upon her auditory perception. It was helpful to a clear understanding of
her reasons for persuading Woody not to become involved in the events of that evening. 
The trial court’s decision to allow that testimony falls within the zone of reasonable
disagreement. Issue five is overruled.
Conclusion
          Accordingly, the trial court’s judgments are affirmed.
 
                                                                           Patrick A. Pirtle

                                                                                 Justice





Do not publish.