In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-00568-CR


____________________



JOSEPH TERRY GREEN, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the Criminal District Court 


Jefferson County, Texas


Trial Cause No. 97116 






MEMORANDUM OPINION


 Joseph Terry Green appeals his conviction for murder. A jury convicted him of the
charged offense and assessed punishment at confinement in the Texas Department of
Criminal Justice--Correctional Institutions Division for life. (1) Green presents two issues for
consideration, the first complaining of error by the trial court in refusing a requested
punishment mitigation instruction, and the second contesting the existence of factually
sufficient evidence to sustain his conviction. We will address the issues in inverse order as
a determination that the record evidence was factually insufficient would foreclose the need
to address the alleged jury-charge error in the punishment phase of the trial.

 As Green asks we review the evidence for factual insufficiency only, we start by
presuming that the evidence supporting the jury's verdict is legally sufficient, i.e., sufficient
for constitutional purposes under the Due Process Clause of the Fourteenth Amendment
pursuant to the standard of review announced in Jackson v. Virginia. (2) See Conner v. State,
67 S.W.3d 192, 198 (Tex. Crim. App. 2001); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000); Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996); Barker v. State,
935 S.W.2d 514, 516 (Tex. App.--Beaumont 1996, pet. ref'd). In a factual sufficiency
review, the evidence is examined in a neutral light rather than in the light most favorable to
the verdict. Johnson, 23 S.W.3d at 7. 

 Evidence can be factually insufficient in one of two ways: (1) when the
evidence supporting the verdict is so weak that the verdict seems clearly wrong
and manifestly unjust, and (2) when the supporting evidence is outweighed by
the great weight and preponderance of the contrary evidence so as to render the
verdict clearly wrong and manifestly unjust. 


Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007) (citing Watson v. State, 204
S.W.3d 404, 414-15 (Tex. Crim. App. 2006)). "[A] reversal for factual insufficiency cannot
occur when 'the greater weight and preponderance of the evidence actually favors
conviction.'" Id. (quoting Watson, 204 S.W.3d at 417). While an appellate court engaged
in a factual sufficiency review is authorized to second-guess the jury to a limited degree, such
review should still be deferential, necessitating a high level of skepticism about the jury's
verdict before reversal can occur. Id. 

 [T]he complete and correct standard a reviewing court must follow to conduct
a Clewis[ (3)] factual sufficiency review of the elements of a criminal offense
asks whether a neutral review of all the evidence, both for and against the
finding, demonstrates that the proof of guilt is so obviously weak as to
undermine confidence in the jury's determination, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof. 


Johnson, 23 S.W.3d at 11. 

 Under either the legal or factual sufficiency standard of review, the trier of fact may
draw reasonable inferences from the evidence and is the exclusive judge of the witnesses'
credibility and of the weight to give to their testimony. Salinas v. State, 88 S.W.3d 677, 680
(Tex. App.--San Antonio 2002, no pet.) (citing Jones, 944 S.W.2d at 647-49). The reviewing
court "must be cognizant of the fact that a jury has already passed on the facts and must give
due deference to the determinations of the jury." Lancon v. State, 253 S.W.3d 699, 704-05
(Tex. Crim. App. 2008). 

 In a conviction based upon circumstantial evidence, it is not required that every fact
point directly and independently to the guilt of the accused; the cumulative force of all the
incriminating circumstances may be sufficient. See Guevara v. State, 152 S.W.3d 45, 49
(Tex. Crim. App. 2004) (lack of direct evidence not dispositive of the issue of defendant's
guilt). Circumstantial evidence in a criminal case is reviewed under the same standard as
direct evidence. See Nicholson v. State, 162 S.W.3d 389, 395 (Tex. App.--Beaumont 2005,
pet. ref'd) (citing Kutzner v. State, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999)). 
"Circumstantial evidence alone is sufficient to establish guilt."[ (4)] Guevara, 152 S.W.3d at
49.

 In a factual sufficiency review, courts of appeals are directed to consider and discuss
the most important evidence that the appellant claims undermines the verdict. See Sims v.
State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). Green's issue is grounded entirely on
the lack of witness credibility. His complaint focuses on the State's main fact witness,
Green's former live-in girlfriend, Kristin Madison. Green characterizes Madison as an
"admitted liar," and refers to her testimony identifying Green as the murderer as "clearly
improbable." She is so labeled because she provided two formal statements to the police, the
first of which consisted mostly of untruths, as Madison herself admitted during her testimony
at trial. 

 Testimony indicated that at the time of trial, Green and Madison had known each
other for about four years and had one child together. Green and the victim, Hector Gomez,
had also known each other for some time prior to the night of the shooting. On the night in
question, May 29, 2005, Madison drove Green to an abandoned store in Port Neches to pick
up Gomez. Apparently, Gomez had arranged to sell a certain quantity of cocaine, supplied
by Green, to a man named Heath Presswood, with the sale to take place at Presswood's house
in Port Neches, and the proceeds subsequently transferred from Gomez to Green. Apparently
the transaction did not go smoothly as an argument erupted between Gomez and Presswood. 
Upon Gomez's leaving the house and returning to Madison's white Toyota Camry with
neither money nor cocaine to return to Green, an argument between the two men that had
been going on since Gomez was picked up re-ignited. 

 According to Madison, the men exited her vehicle and continued to argue until Green
produced a handgun and fired it once at Gomez. This shot apparently grazed Gomez across
his chest area, and did not cause him any significant harm. Madison testified she then
proceeded to drive a short distance up the street, made a right turn at the corner and stopped
her vehicle. When she looked back to the location where Green and Gomez had been, she
only observed Green walking toward her vehicle and carrying the handgun. Although
Madison testified she did not actually witness Green fire the fatal shot to Gomez's head, she
did hear this second shot. She further indicated that at the time of the second shot, she saw
no one else on the street, and knew of no one else who could have fired the fatal shot. 
Madison also denied that she was the person who shot Gomez. She reiterated the fact that
her first written statement to the authorities was a lie and was based upon what Green had
told her to say, but that her second written statement, like her testimony during trial, was the
truth. 

 Green testified in his own defense. He initially admitted having been previously
convicted for aggravated robbery, and to having provided the authorities three separate
written statements regarding the murder, none of which contained the full and complete truth. 
His purported motive for the false statements was to protect his then-girlfriend, Kristin
Madison. Under oath, as he was for his three prior written statements, Green proceeded to
relate a fourth version of the events leading up to the murder of Hector Gomez, this time
naming Kristin Madison as Gomez's killer. (5) Other than identifying Madison as the murderer,
Green's trial testimony recounting the events of the night in question was similar overall to
the events as elicited from Madison.

 In his brief, Green argues the trial evidence is factually insufficient: 

 [A]ppellant's conviction rests upon the testimony of an admitted liar[.] . . . 


 [T]he evidence detailed herein reveals that the state's star witness, Kristin
Madison, admitted she lied to law enforcement because she might somehow
be involved. It was not until seven weeks after the alleged incident that
Madison gave another statement attempting to implicate appellant. 


Without explanation or argument, Green further asserts that "the totality of the evidence
summarized in the Statement of Facts establishes his innocence." However, our examination
of his brief reveals no discussion of all the trial evidence to support this assertion. Moreover,
Green does not suggest how his three admittedly false statements to the authorities, as well
as his prior aggravated robbery conviction, left his own credibility before the factfinder
supposedly beyond question. By contrast, other than an occasional response indicative of
confusion or memory lapse, we find nothing in Madison's testimony that stands out as being
so inherently incredible that a rational jury could find no truth in it. 

 At the heart of this issue, Green is requesting that we simply reevaluate the jury's
credibility determinations -- a request which we are not at liberty to undertake. We must not
substantially intrude upon the jury's role as the sole judge of the weight and credibility of
witness testimony. Vasquez v. State, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). Green
points to nothing in the record that would provide an objective basis from which we could
say that the great weight and preponderance of the evidence contradicts the jury's verdict
thereby permitting us to order a new trial. See Watson, 204 S.W.3d at 417. Green does not
take issue with other evidence heard by the jury circumstantially linking him to the murder,
such as the testimony from his uncle, Peter Chavis, indicating that, following Green's arrest
for Gomez's murder, Green asked Chavis "to take the [murder] rap for him." Chavis stated
he refused the request. Additionally, Green does not point to any evidence suggesting a
motive for Madison to murder Gomez, while Green's own testimony indicates he was so
displeased with Gomez's behavior surrounding the drug transaction with Presswood that he
(Green) fired a shot grazing Gomez's chest area in order to impress on Gomez the
importance of Gomez's returning to Presswood's house to "get my stuff." 

 Green did expressly deny that he would have killed Gomez over the missing cocaine
and the missing money. He also denied asking his uncle to take the murder rap for him;
Green explained he had not discussed the matter with his uncle, but that the rap in question
pertained to a pending aggravated robbery charge, not the murder of Gomez. But even
though Green usually had an explanation or excuse when confronted with incriminating
circumstances by the State's attorney, it was for the jury to determine if Green was lying or
telling the truth. "Because the jury is the sole judge of a witness's credibility, and the weight
to be given the testimony, it may choose to believe some testimony and disbelieve other
testimony." Lancon, 253 S.W.3d at 707. Under the record before us, we can neither hold
that the evidence, both direct and circumstantial, indicating it was Green who murdered
Gomez, is too weak to support the jury's verdict, nor can we hold that the evidence
supporting Green's version of the events greatly weighs against the jury's verdict. See Laster
v. State, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009). We therefore overrule issue two. Green's remaining issue asserts he was entitled to a "sudden passion" (6) instruction at
the punishment phase of his trial and it was error for the trial court to have denied his request. 
The State argued to the trial court, and now to us, that Green explicitly testified that he did
not kill Gomez and, therefore, is not entitled to the instruction because "[e]ssential to use of
this defense is his admission that he committed the crime." 

 "Sudden passion" is a mitigating circumstance that, if determined by a jury to have
been proven by a preponderance of the evidence, reduces the punishment level for murder
from a first degree felony to a second degree felony. See McKinney v. State, 179 S.W.3d
565, 569 (Tex. Crim. App. 2005); Tex. Pen. Code Ann. § 19.02(c), (d) (Vernon 2003). (7) 
However, before a defendant is entitled to a sudden passion jury instruction, there must be
record evidence of an adequate provocation, that a passion or an emotion such as fear, terror,
anger, rage, or resentment existed, that the murder occurred while the passion still existed
and before there was reasonable opportunity for the passion to subside, and that there was
a causal connection between the provocation, the passion, and the murder. See McKinney,
179 S.W.3d at 569. In the seminal case of Trevino v. State, 100 S.W.3d 232 (Tex. Crim.
App. 2003), the Court of Criminal Appeals held that the prior test for determining whether
a sudden passion lesser included offense [voluntary manslaughter] instruction should be
included in the jury charge at guilt/innocence is still applicable even though the current state
of the law has reconstituted the concept of "sudden passion" as a mitigation of punishment
issue. Id. at 237-38. "That is, a sudden passion charge should be given if there is some
evidence to support it, even if that evidence is weak, impeached, contradicted, or
unbelievable." Id. at 238. That standard is familiar not only to issues involving lesser
included offenses, but is typically used to determine the propriety of adding requested
defensive issues to the jury charge. See Johnson v. State, 271 S.W.3d 359, 362 (Tex. App.--Beaumont 2008, pet. filed).

 The standard for reviewing requests for defensive issues has remained the same for
a number of years. In addition to the language quoted above from Trevino, a defendant's
right to an instruction on every defensive issue raised by the evidence is mandated
notwithstanding the fact the trial court may think the purportedly pertinent evidence entirely
unworthy of belief. See Walters v. State, 247 S.W.3d 204, 209 (Tex. Crim. App. 2007)
(citing Booth v. State, 679 S.W.2d 498 (Tex. Crim. App. 1984)); Granger v. State, 3 S.W.3d
36, 38-39 (Tex. Crim. App. 1999); see generally Saxton v. State, 804 S.W.2d 910, 913 n.9
(Tex. Crim. App. 1991). This standard is designed to ensure it is the jury, and not the trial
judge, that will decide the relative credibility of all the evidence. Granger, 3 S.W.3d at 38
(citing Woodfox v. State, 742 S.W.2d 408, 410 (Tex. Crim. App. 1987)). In analyzing the
issue, we view the evidence in the light most favorable to the defensive issue requested. See
Bufkin v. State, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006) (citing Ferrel v. State, 55
S.W.3d 586, 591 (Tex. Crim. App. 2001)). When evidence elicited at trial supports more
than one defensive theory, the defendant is still entitled to an instruction on every theory
raised, even if the defenses are themselves inconsistent or contradictory. See VanBrackle v.
State, 179 S.W.3d 708, 714 (Tex. App.--Austin 2005, no pet.) (citing Booth, 679 S.W.2d at
501). A defendant need not even testify in order for a defensive issue to be sufficiently
raised. Smith v. State, 676 S.W.2d 584, 585-87 (Tex. Crim. App. 1984); VanBrackle, 179
S.W.3d at 712. Defensive issues may be raised by the testimony of any witness, even one
called by the State. See Woodfox, 742 S.W.2d at 408-10; Jackson v. State, 110 S.W.3d 626,
631 (Tex. App.--Houston [14th Dist.] 2003, pet. ref'd).

 Our examination of the record evidence and of the pertinent law leads us to conclude
the trial court did not err in refusing Green's requested punishment mitigation instruction. 
As the current statutory definitions of "sudden passion" and "adequate cause" set out in
section 19.02(a) are identical to those provided under the former voluntary manslaughter
offense, we have relied on decisions handed down under the former code provisions for
guidance in determining whether Green was entitled to the instruction at issue. See Roberts
v. State, 590 S.W.2d 498, 501 (Tex. Crim. App. 1979). 

 Initially, our review of all the evidence indicates any "anger" upon Green's part
towards Gomez was not of a degree sufficient to render Green's mind incapable of cool
reflection. See McKinney, 179 S.W.3d at 570; Nance v. State, 807 S.W.2d 855, 860-61 (Tex.
App.--Corpus Christi 1991, pet. ref'd) (not all testimony of "anger" and "fear" entitles
defendant to a sudden passion instruction). It was undisputed that Gomez was unarmed at
the time he was murdered. There was no testimony from any witness that Gomez was ever
aggressive with Green at any point other than the somewhat indistinct testimony that Green
and Gomez "argued" on-and-off throughout the night. The apparent basis for Green's anger--his belief that Gomez had somehow cheated him in the drug deal with Presswood--was
compounded to some degree by the fact that Gomez had done this to Green on past
occasions. 

 The core concept of "sudden passion" is that at the moment of the killing the actor's
mental state has rendered him incapable of rational thought and collected action. See
Swearingen v. State, 270 S.W.3d 804, 820 (Tex. App.--Austin 2008, pet. filed). Merely
acting in response to provocation of another, however, is not enough to raise the issue. See
Trevino, 100 S.W.3d at 241. "Instead, there must be some evidence that the defendant was
under the immediate influence of sudden passion." Id. (emphasis added). The issue is
whether the evidence of provocation elicited at trial meets the statutory definition of
"adequate cause," i.e., that it would produce that degree of anger, rage, resentment, or terror
in a person of ordinary temper rendering the actor's mind completely incapable of any
measured or calculated thought. See Tex. Pen. Code Ann. § 19.02(a)(1) (Vernon 2003);
Davis v. State, 268 S.W.3d 683, 693 (Tex. App.--Fort Worth 2008, pet. ref'd). The test is
objective--actor's response to the "provocation" examined from the standpoint of an
"ordinary and prudent person," not subjective--not examined from the standpoint of a
"psychopath or sociopath." See Turner v. State, 87 S.W.3d 111, 117-18 (Tex. Crim. App.
2002).

 As noted above, the record depicts Green and Gomez arguing over the botched drug
deal with Gomez portrayed as mostly indifferent to Green's loss of the drugs and sale
proceeds, but it may also be inferred from past dealings between the two men that Gomez
had a willing hand in Green's losses. While it could be surmised that Gomez's killing was
the culmination of a series of events that had taken place over time between Gomez and
Green involving their illicit drug business, we have no evidence from which such a scenario
could reasonably be inferred. See Moore v. State, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998)
(sudden passion essentially a culpable mental state; mental states almost always inferred from
acts and words). Green adamantly testified he would not have killed Gomez over the loss
of the drugs and the money, and no other witness shed any light on the relationship between
Green and Gomez to any pertinent degree. 

 In Saldivar v. State, 980 S.W.2d 475 (Tex. App.--Houston [14th Dist.] 1998, pet.
ref'd), the defendant requested a sudden passion instruction at the punishment phase of trial
based upon her written statement to the authorities. Id. at 505. Her statement indicated she
became "mad" during a conversation with the victim, Saldivar's employer, and that they
began to "argue[]." Id. They "argued" because Saldivar wanted to quit working for the
victim. Id. Saldivar then removed a handgun from her purse, cocked it, and shot the victim
as the victim was walking away. Id. at 505-06. Finding no error in the trial court's denial
of the requested instruction, the court of appeals explained: 

 In this case, appellant's written statement does not raise the issue of
sudden passion arising from adequate cause. While the statement shows that
complainant provoked appellant's anger by telling her about Quintanilla's
accusations and that they argued over her continued employment, it does not
reflect evidence of the extreme emotional and psychological state defining
sudden passion or adequate cause. Shooting an employer and friend in the
back as she walks away from an argument is not an objectively common
response in an ordinary reasonable person. "The murderous acts of one not of
ordinary temper or whose response to the alleged cause is not objectively
common in the ordinary, reasonable person does not support a voluntary
manslaughter issue." Willis v. State, 936 S.W.2d 302, 308 (Tex. App.--Tyler
1996, pet. ref'd); Lopez v. State, 716 S.W.2d 127, 129 (Tex. App.--El Paso
1986, pet. ref'd). "In other words, voluntary manslaughter is not available to
one whose actual emotional responses are aberrational in this society." Willis,
936 S.W.2d at 308.


Id. at 506. 

 However, even agreeing for the sake of argument that some evidence demonstrated
a measure of "provocation" on Gomez's part with regard to the mishandled drug deal, the
record contains no evidence of what transpired between the two men immediately prior to
Gomez's being shot in the head by Green. In other words, the record lacks any evidence of
"contemporaneous provocation" by Gomez immediately prior to the shooting. See Saenz v.
State, 930 S.W.2d 249, 251 (Tex. App.--Amarillo 1996, no pet.). Without some evidence of
what provocative acts, words, or omissions by Gomez occurred immediately prior to Green's
shooting him in the head, the existence of "adequate cause" has not been demonstrated. See
Garza v. State, 878 S.W.2d 213, 217-20 (Tex. App.--Corpus Christi 1994, pet. ref'd). 
Madison repeatedly testified that Green and Gomez were not in her presence as she had
driven away from the two men prior to Gomez's sustaining the fatal shot to the head. For his
part, Green denied killing Gomez and identified Madison as the murderer. Additionally, we
find there is no evidence from which to raise a reasonable inference that in shooting Gomez
in the head, Green was acting "in the throes of actual, subjective passion." See Carrillo v.
State, 889 S.W.2d 501, 503 (Tex. App.- -Houston [14th Dist.] 1994, no pet.); Lopez v. State,
716 S.W.2d 127, 129 (Tex. App.--El Paso 1986, pet. ref'd). After careful examination of the
entire record, the Court finds no evidence from which a rational jury could infer that at the
time Green killed Gomez Green was under the "immediate influence of sudden passion"
having arisen from provocation of such magnitude by Gomez that, at the moment of the fatal
shot, Green's mind was incapable of rational thought and calculated action. See Moore, 969
S.W.2d at 11; see also McKinney, 179 S.W.2d at 569 (evidence cannot be so weak,
contested, or incredible that it could not support such a finding by a rational jury) (citing
Trevino, 100 S.W.3d at 238); Swearingen, 270 S.W.3d at 820. We therefore overrule
Green's first issue. The judgment of the trial court is affirmed. 

 AFFIRMED.

 __________________________________

 CHARLES KREGER

 Justice


Submitted on February 4, 2009

Opinion Delivered April 1, 2009

Do not publish


Before McKeithen, C.J., Kreger and Horton, JJ.
1. Green's indictment included an enhancement paragraph alleging a prior felony
conviction. Upon Green's plea of true to the enhancement, the jury found the allegation to
be true. 
2. 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). 
3. See Clewis v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996). 
4. "Circumstantial evidence is 'direct proof of a secondary fact which, by logical
inference, demonstrates the ultimate fact to be proven.'" See Cowan v. State, 840 S.W.2d
435, 438 n.10 (Tex. Crim. App. 1992) (quoting Taylor v. State, 684 S.W.2d 682, 684 (Tex.
Crim. App. 1984)).
5. In his first statement, Green told detectives he just happened to be at a party at a
house in Port Neches when he heard a gunshot and went to investigate but did not see the
shooting nor identify a shooter. Green depicts himself as a passive witness to Gomez's
murder in his second statement, and names as the killer "some white dude in a white Acura." 
Green's third statement begins truthfully, depicting himself, Madison, and Gomez driving
to "Heath's house" in Madison's car, and admitting to shooting Gomez across the chest, but
ultimately naming Heath Presswood as Gomez's murderer. 
6. We note that some reviewing courts have used the words "sudden passion" as
shorthand for the entire punishment mitigation issue as set out in section 19.02(d) ("caused
the death under the immediate influence of sudden passion arising from an adequate cause"),
and not just the singular term-of-art defined in section 19.02(a)(2). See, e.g., Ruiz v. State,
753 S.W.2d 681, 683 n.3 (Tex. Crim. App. 1988); see Tex. Pen. Code Ann. § 19.02 (Vernon
2003). To lessen confusion and wearisome iteration, we hereafter, unless otherwise noted,
use the term as shorthand for the two-prong punishment mitigation issue provided under
section 19.02(d). 
7. Section 19.02(a)(2) defines "[s]udden passion" as "passion directly caused by and
arising out of provocation by the individual killed or another acting with the person killed
which passion arises at the time of the offense and is not solely the result of former
provocation." Tex. Pen. Code Ann. § 19.02 (a)(2) (Vernon 2003). The statute defines 
"[a]dequate cause" as "cause that would commonly produce a degree of anger, rage,
resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable
of cool reflection." See id. § 19.02 (a)(1).